## Roberts *versus* The Dauphin Deposite Bank.

1. A steam engine and boilers fixed in an anthracite furnace for the manufacture of iron are part of the realty.

2. A writ of replevin is effectual for the delivery of *personal* property only; it furnishes no justification to an officer who under it severs and delivers such a steam engine and boilers, a part of the realty.

3. Though the engine and boilers were put up after the mortgage to the plaintiff was given, they constituted a part of the mortgage security, and they were not liable to removal by the mortgagor or her assigns, if such removal was injurious to the mortgagee, who has a right to benefit from any appreciation of the mortgaged premises arising from any cause.

4. Where the mortgagor is not of ability to pay the mortgage debts, and a *second* mortgagee has been injured by the removal of the engine and other fixtures, he may maintain an action on the case for the injury.

ERROR to the Common Pleas of *Dauphin county*.

This was an action on the case, brought by the Dauphin Deposite Bank against Anthony E. Roberts and Henry M. Bayard. The summons issued April 17, 1851, and was served on A. E. Roberts the next day, in the city of Philadelphia, by the sheriff of Dauphin county; which service the Court below refused to quash or set aside, and this was, *inter alia*, assigned as error. The service was made under the Act of 14th April, 1851. See *Acts*, p. 612.

On the 15th April, 1847, the sheriff of Dauphin county, by deed duly acknowledged, conveyed to Ann C. Bayard, in fee-simple, a tract of land in said county, comprising two adjoining tracts of 100 and 99¾ acres respectively, on the first of which was an anthracite blast furnace for the manufacture of iron, called "The Emeline Furnace," propelled by water power. The first tract was subject to a mortgage given by John C. Sims, a former owner, to Wm. Cochran, administrator of John Hatfield, for $2699.16½, dated 24th March, 1834, and recorded same day. The other tract was subject to a mortgage to Daniel W. Gross, administrator of Abraham Gross, deceased, for $6000, payable in instalments from 1838 to 1842; dated and recorded 30th March, 1837.

Both these mortgages are still unsatisfied, and liens on the land.

On the 29th April, 1847, Ann C. Bayard executed and delivered her bond to the Dauphin Deposite Bank, plaintiffs in this action, for $7200, payable in one year, with interest, secured by a mortgage of same date on the above-named "Emeline Furnace estate," of 200 acres (comprising the two tracts above mentioned), as conveyed to her by the sheriff.

By a collateral agreement of the same date, the Bank agreed that if the interest on said mortgage were paid half-yearly, on the 1st of April and October, or in the space of thirty days thereafter,

[Roberts *v.* The Dauphin Deposite Bank.]

the principal thereof should not be payable until October 1, 1850, "and if the said Ann C. Bayard, her heirs or assigns, shall well and truly make the payments of interest of the said debt semi-annually, and pay the principal thereof on the said first day of October, A. D. 1850, according to the terms prescribed in the foregoing agreement, without failing or making default as aforesaid, the said Bank will stay all proceedings on the said bond and mortgage of the said Ann C. Bayard till the said first day of October, A. D. 1850, or such default shall be made."

The interest was so paid by A. C. Bayard, the last payment being made by her to the Bank on the 30th April, 1850, in full to the 1st April, 1850.

In 1849, Ann C. Bayard being still the owner of the tract, and in possession, placed thereon a steam engine, boilers, bellows, receiver, &c., which was attached to bed-plates in the wall of the furnace by bolts kept in their places by iron nuts screwed on them. This engine was used about three months in blowing the furnace, until the stack of the furnace fell down, and the blast was thereby interrupted, and the furnace was afterwards abandoned. An engine house was put over this engine after it was put up.

On the 29th April, 1850, Ann C. Bayard, being still the owner of the land, and in possession thereof, conveyed by bill of sale to Richard H. Bayard (a judgment creditor of hers to the amount of $16,550), for the consideration of $5900, the said steam engine, boilers, bellows, and other machinery connected therewith.

On the 16th May, 1850, Richard H. Bayard, by authority from Ann C. Bayard, began removing said engine and machinery. His agent unscrewed all the bolts that fastened the engine to its bed, took off the nuts, took out the connecting shaft between the engine and cylinder, and the bolts of the cylinder, and took off the pipe connecting the boilers to the engine, and such small parts of the engine as three men could lift, and loosened it from its foundation; and was engaged in taking down the wall on which the boilers rested, when a writ of estrepement, at the suit of the Bank, was served by the sheriff, and the parties desisted.

Evidence of the insolvency of Miss Bayard, in or about the autumn of 1850, was given (under exception) by the plaintiffs.

On the 14th September, 1850, Richard H. Bayard, by bill of sale, for the consideration of $5000, conveyed said steam engine, boilers, bellows, and machinery, to Joshua E. Driver, of the state of Delaware.

On the 16th September, 1850, Joshua E. Driver issued from the Circuit Court of the United States for the Eastern District of Pennsylvania, a writ of replevin against said Ann C. Bayard, "for a steam engine and boilers, blowing apparatus, bellows, and receiver, &c., valued at $5000, now at Emeline Furnace, in the county of Dauphin." This writ was the same day delivered to the defend-

[Roberts v. The Dauphin Deposite Bank.]

ant, Anthony E. Roberts, then marshal of the United States for said district, whose deputy, charged with the execution of said writ, arrived at the above-named furnace the next morning (17th September, 1850), served the writ on the man in charge of the engine house where the engine was placed, got the key of the house from him, and took possession of the house and engine, and then commenced removing the engine by taking out some of the bolts on the steam-chest of the engine, the nuts of which had previously been taken off, preparatory to its removal, and remained in possession until the engine was removed.

On the 18th September, 1850, the Dauphin 'Deposite Bank issued an ejectment against Ann C. Bayard and Joseph Feidt, to collect the amount of the mortgage, which was served on the deputy, and returned "nihil" as to Ann C. Bayard; nothing further was done in this suit. On the same day, they obtained a writ of estrepement from the Court of Common Pleas of Dauphin county, directed to A. E. Roberts, Joshua E. Driver, and Samuel Halzell, commanding them not to remove the engine. This was served on Roberts on the 20th, together with a written notice from the attorney for the Bank, notifying him that he would be held responsible if he removed the engine, as it was part of the freehold on which the Bank had a mortgage.

At the time of issuing these estrepements and ejectment, no interest was due by Miss Bayard to the Bank.

Mr. Roberts proceeded in the execution of the replevin, removed the engine from the furnace, and delivered it to Driver, the plaintiff; and on the 12th November made return of the replevin as follows:

"I have caused to be replevied and delivered unto Joshua E. Driver, the plaintiff within named, the steam engine and all the other apparatus within described, except the receiver. So answers
A. E. ROBERTS, Marshal."

On the same day, a *narr.* in replevin and rule to plead were filed, and on the 26th December, 1850, judgment for want of a plea was duly entered in said suit against the defendant, A. C. Bayard.

In October, 1850, the Dauphin Deposite Bank issued a *scire facias* on their mortgage against Ann C. Bayard, and obtained judgment, by confession, for $7200, and interest from October 1, 1850. A *levari facias* then issued, under which the "Emeline Furnace estate," above mentioned, was sold by the sheriff of Dauphin county to the Bank for $100, and a sheriff's deed made and duly acknowledged to them on the 25th of November, 1850.

In the case trying, some evidence was given by plaintiffs that the land, furnace, &c., in the fall of 1850, was worth from $7000 to $8000, and in 1847 was worth from $9000 to $12,000, having

[Roberts *v.* The Dauphin Deposite Bank.]

diminished through the depreciation of the iron business, the carrying away of the dam by a freshet, &c.

Under these facts, and the charge of the Court, the jury rendered a verdict for the Bank, the plaintiff, for $5300.

On the trial, points, as follows, were presented on the part of defendant.

1. The plaintiffs cannot sustain this action against defendant Roberts, as they had at the time of the removal of the engine, &c., no interest in the Emeline Furnace property but that of *second* mortgagees.

2. If Ann C. Bayard placed the engine on the land after she gave the mortgage to the plaintiffs, she had the right of selling or removing it prior to the sheriff's sale.

3. Her sale of it to Richard H. Bayard, and the taking possession of it by Rogers as his agent, and removal of the fastenings (if believed), constituted it personal property.

4. If, after this, it was transferred by R. H. Bayard to Driver, and the defendant Roberts took it by virtue of a writ of replevin at Driver's suit, he is protected, and the verdict must be in his favor.

5. If Roberts or his deputies took possession of the engine under the replevin, before the writ of estrepement of September was served on him, he was not bound to desist therefrom.

6. If the jury believe that the engine gave no additional value to the property in November, 1850, the verdict must be for defendants.

PEARSON, J., answered as follows:

1. This action can be sustained as well by a second as a first mortgagee: 12 *New Hamp.* 558. The mortgage, accompanied with the writ of estrepement, gave the mortgagee such an interest as will enable it to maintain an action, if the jury believe the engine, &c., remained a fixture at the time the writ of estrepement was served on the marshal. This is the proper form of action.

2. There is no additional right in a mortgagor to remove fixtures, because erected after the mortgage was given: 2 *Greenleaf's Reports* 132; *Coote on Mortgages* 351.

3. Whether any portion of the property was so far severed by the act of Mr. Bayard before the writ of estrepement was served on him in May, 1850, is a question for the jury, depending on the principles stated relative to the removal of fixtures, and severing them from the freehold.

4 and 5. If the severance of the fixtures from the freehold was perfect in May, 1850, the replevin could lawfully issue, and if the marshal under his writ seized the property before the writ of estrepement issued and was served on him, he could lawfully proceed to remove the articles from the premises, and the action cannot

[Roberts v. The Dauphin Deposite Bank.]

be sustained.. But if the engine and other fixtures were a part of the freehold when the marshal went on with his writ of replevin, the articles were not the subject of such a proceeding; and if the plaintiff brought its ejectment on account of the attempted waste, and had the writ of estrepement issued to prevent it, and served on the marshal before his severance of the same from the freehold, he was bound to desist, and is subject to an action for proceeding to the injury of the plaintiff, against the mandate of the writ of estrepement.

6. The law is as stated in this point. If the mortgaged premises would bring no more with, than without these fixtures, the plaintiff has sustained no damages, and cannot recover. The right of recovery depends on *substantial* injury.

Verdict was rendered for the plaintiff, for $5300.

Various errors were assigned; for the more important ones see the opinion of LOWRIE, J.

The case was argued by *J. P. Montgomery*, of Philadelphia, and *Fisher*, on part of plaintiffs in error.

*Kunkel* and *McCormick*, for defendant in error.—It was, *inter alia*, contended, that the fact that the engine and other machinery were put up after the date of the mortgage can make no difference, as they were equally a part of the real estate. The true inquiry was, whether the removal impaired the security of the mortgage. When land has been taken by a canal or railroad company, the damages belong to and may be recovered by one who has a mortgage on the land: 16 *Ser. & R.* 40, Reese v. Adams; 7 *Id.* 411. Reference was also made to the case of McCullough v. Irvine's Executors, 1 *Harris* 438.

The service of the writ was made under the Act of 14th April, 1851.

The opinion of the Court, filed July 20, was delivered by
LOWRIE, J.—The Bank was mortgagee of certain land of Ann C. Bayard, on which was a furnace for the manufacture of iron, which was worked by means of a steam engine, boilers, blowing apparatus, bellows, receiver, &c., erected by the owner of the land. She sold the engine and machinery to her brother, Richard H. Bayard, who sold the same to Joshua E. Driver, who issued a replevin out of the Circuit Court of the United States, and thereupon A. E. Roberts, the marshal, took and carried away the engine and machinery. The marshal in the United States Courts occupies the same position as a sheriff does in our state Courts, and his writ furnishes him the same protection. But a writ of replevin is effectual for the delivery of *personal* property only; and it furnishes no justification to an officer, who, under it, severs and delivers

[Roberts *v.* The Dauphin Deposite Bank.]

part of the *realty*. This engine, with its appurtenances, was part of the realty, unless Ann C. Bayard had a right, as against her mortgagee, to treat them as personal property, which, under ordinary circumstances, she had not.

It is insisted, however, that because the engine, &c., were put up after the giving of the mortgage, therefore they constituted no part of the mortgage security, and might be removed without doing any wrong to the mortgagee. But this is not so. As the mortgagee may suffer by the depreciation of the property, arising from fluctuations in value, from accident, and from neglect, so he may be benefited by its appreciation, whether the same arises from the proper cultivation and improvement of the property, or from any other cause. No other rule could be at all practical.

It is further insisted that Richard H. Bayard, after his purchase and before the issue of the replevin, had severed the engine and machinery from the freehold, and that the replevin was executed after the property was severed, and without notice of the claim of the mortgagee. But we can draw no inference from this proposition, because the jury have negatived all the facts assumed in it.

We do not perceive that this case has, or was treated as having, any proper connection with the various proceedings against Ann C. Bayard in the Common Pleas of Dauphin, including the action and writs of estrepement on the plaintiff's mortgage. The sheriff did not properly execute those writs; but, to avoid an indecent conflict of authorities, suffered the defendants to remove the property. That remedy thereby became ineffectual, and the present action is brought as a substitute. The writs of estrepement may therefore be of no value here, but as means of proving that the defendants below were fully warned of the plaintiff's claim, and perhaps in aggravation of the damages.

It is said that the Court below erred in their charge as to damages. But wherein the error consists we are not informed, and we do not choose to guess. This objection is therefore dismissed, as being entirely too general. We feel sure, however, that the defendants did not suffer injustice from the instructions of the Court. The plaintiff's mortgage was for $7200, and, on a sale under it, the land, after the removal of the engine, &c., brought but $100, charged with a prior mortgage; and thus it appears that the waste injured the second mortgage alone. In issuing the replevin, the engine, &c., were valued at $5000; the witnesses all place a higher estimate on them, and the jury have assessed the damages at $5300. Surely this verdict is not too high. But if this were doubtful, the spoilers, and not the righteous creditor, should bear the consequences of the doubt raised by themselves.

It is somewhat strange that the only exceptions to evidence are founded upon offers to prove the very allegations of the declaration. If the defendants did not wish to hear these proved, they should

[Roberts v. The Dauphin Deposite Bank.]

have demurred to the count which contains them. In some cases there are allegations which are merely formal, which need not and should not be proved, but such is not the case in this instance.

But it is insisted that the Bank had no such interest in the property as to entitle it to this action, having no title but as second mortgagees. Yet the declaration alleges, and the jury have found, that the mortgagor is insolvent, and that by the defendants' act, the plaintiff's mortgage is rendered almost entirely valueless. It is of the very nature of the action on the case that it is adapted as a remedy for all legal wrongs, for redress of which the other forms of action are not applicable. And the argument of the defendant in error is perfectly legitimate in this state, that the fact that an injunction lies to prevent such an act, 2 *Johns. Ch. R.* 128, proves that it is regarded by the law as an injury. And our law, granting an estrepement in such a case as this, proves the same thing. Besides this, the property was mortgaged or pawned to the plaintiff, and an injury to the thing pawned is a wrong done to the pawnee, if thereby he loses his claim or any part of it; and though the number of previous mortgagees may increase the difficulty of proving that the plaintiff was injured, yet this furnishes no bar in favor of a wrongdoer. The plaintiff had such an interest as was entitled to protection.

Judgment affirmed.