## Sampson *versus* Graham.

1. An article which would otherwise be deemed a fixture may by severance and the understanding of the parties become a chattel.
2. When a stove pattern used in a foundry is not a fixture.

November 18th 1880. Before Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ. Sharswood, C. J., absent.

Error to the Court of Common Pleas of *Washington county*: Of October and November Term 1880, No. 300.

Feigned issue, wherein E. T. Graham was plaintiff and James Sampson, in trust for the Peoples' Savings Bank, was defendant, to try the title to a stove pattern seized by the sheriff as the property of A. V. Graham.

At the trial, before Hart, P. J., it appeared that in 1873, George A. Keller, who owned a foundry property and dwelling attached in Monongahela city, sold the same to A. V. Graham, who was the father of the plaintiff. A. V. Graham carried on business in the foundry until the fall of 1877, when he took his son and Henry Rohrer into partnership with him. That partnership continued until the following October 1878, when the firm was dissolved by E. T. Graham buying out the interests of his father and Henry Rohrer in the concern. The stock, fixtures, &c., in the foundry were then valued by the parties at about $1100, making the interest of each party about $369.

At this time, there were two liens against this real estate : 1. A mortgage for $1000, being a balance of the purchase-money and a judgment for $2000. Both of these liens were held by the Peoples' Savings Bank of Monongahela city, the defendant. About the time of the dissolution of the partnership and purchase by the son, or shortly after, E. T. Graham purchased from his father certain property about the foundry, which belonged to the father and not to the firm. The purpose of this arrangement, as testified by the father and the son, and by one Alexander, was to secure Alexander

[Sampson *v.* Graham.]

& Co.'s debt of that amount, which the father owed them, the son binding himself to assume and pay said debt in consideration of the transfer of these goods to him by the father. The bill of sale to E. T. Graham was in evidence, and was dated the 14th of November 1878. According to the testimony of the father and son, this arrangement was brought about by the suggestion of Alexander in the first instance, made about the time of the dissolution of the firm. It was agreed upon at that time, and a bill of sale was drawn up and executed, transferring this property, the pattern in dispute and individual property of the father about the foundry, and certain furniture to the son, E. T. Graham.

At the time that the son purchased the interests of his father and Rohrer in the partnership, he rented from his father the foundry building, and went into possession, and in about a month afterwards he resumed business in his own name, retaining his father as a hired hand, the latter being a practical moulder by trade. The father, when he was managing man of the firm, occupied the office, but after the son commenced running the business, he took his place as a moulder in the foundry proper. In the meantime, the pattern in suit had been deposited with Henry Rohrer as security for the note which E. T. Graham had given for the three hundred and sixty-nine dollars and some cents, which was Rohrer's interest in the foundry, and was removed at that time by Rohrer to his own residence, about a mile distant from the foundry.

The next spring, E. T. Graham, the plaintiff, testified that after the purchases of the real estate by the bank, he having become the tenant of the bank, and paying rent to it, he borrowed this pattern from Rohrer for a short time to make a few stoves. After he had used it for that purpose, he testified he returned it to Rohrer, and it remained in Rohrer's possession until after E. T. Graham had put up a new foundry, when he got the pattern again, and it was in this new foundry at the time the sheriff made the levy upon it, on the 28th of December 1878, when the bank issued an execution upon its $2000 judgment. On that execution the real estate was sold by the sheriff on the 13th of January 1879.

On the 28th of December 1878, the personal property, then being in the house and in the foundry, were levied upon under the same writ. That did not include this pattern, for it was not then in the foundry. E. T. Graham then gave notice to the sheriff that the furniture, and what had been the individual property of his father in the foundry, belonged to him by virtue of this purchase from his father under the arrangement with Alexander. An issue was raised upon that claim, and was tried and disposed of. After this the sheriff seized, as the property of A. V. Graham, the pattern of the stove which went by the name " Try Me, No. 8," and which is the subject of this controversy. He was notified by E. T. Graham, the plaintiff, that he claimed to be the owner of the pat-

[Sampson v. Graham.]

tern. A rule was obtained by the sheriff from the Court of Common Pleas upon E. T. Graham and the execution-creditor, the bank, to maintain or relinquish their respective claims, and under that rule this issue was framed to determine the right.

In their charge, the court, inter alia, said :

"Now, what is the question for the jury to determine ? It is simply whether at the date of the sheriff's levy the property or ownership of the pattern was in E. T. Graham or not. It is contended by the counsel for the defendant that this pattern was a fixture, and that as such it was part of the real estate of the foundry, and was covered by the liens against the real estate, and, therefore, that the severance and sale of it by the father was a nullity, and, moreover, it constituted what is called a fraud in law. [I cannot, however, adopt this view of the law. Patterns, fallow-boards, flasks, and such things in a foundry, in my judgment, are mere furniture and not fixtures, and the jury is now instructed, as matter of law, that this stove pattern was not a fixture but a mere chattel.] The question then for you to determine, is whether there was any fraud in fact ; whether the sale of the property in the foundry to the son by the father was intended to protect or cover up the goods from levy and sale by the creditors of the father ? If so, it was a fraud against the creditors."

Verdict for plaintiff, and after judgment defendant took this writ and alleged that the court erred in the foregoing portion of the charge included in brackets.

*G. A. Hoffmann, Jr.* and *Aiken & Duncan*, for plaintiff in error. —The set of stove patterns embraced in this controversy placed in the foundry in the year 1875, if fixtures, were covered by the purchase-money mortgage of 1st April 1873 : Roberts v. The Dauphin County Bank, 7 Harris 71 ; and by the lien of the judgment for $2000 recovered in 1878 : Witmer's Appeal, 9 Wright 463 ; and the title thereto passed with the real estate to the plaintiff in error under the sheriff's sale in January 1879 ; and the severance and sale in November 1878, by the then owner of the realty, when the purchaser, at the time, had actual and constructive notice of the liens, would therefore be a nullity, and the property could be levied upon and sold by the sheriff under an execution against A. V. Graham, in favor of the purchaser of the real estate : Hoskin v. Woodward, 9 Wright 42.

In Gray v. Holdship, 17 S. & R. 413, the principle was established that " everything put into, and forming part of a building, or machinery for manufacturing purposes, and essential to the manufactory is part of the freehold." "Whether fast or loose, therefore, all the machinery of a manufactory which is necessary to constitute it, and without it would not be a manufactory at all, must pass for a part of the freehold :" Voorhis v. Freeman, 2 W. & S. 116 :

[Sampson *v.* Graham.]

Heaton *v.* Findlay, 2 Jones 304 ; Harlan *v.* Harlan, 3 Harris 507 ; Overton *v.* Williston, 7 Casey 158 ; Hoskin *v.* Woodward, 9 Wright 42 ; Witmer's Appeal, Id. 462; Ege *v.* Kille, 3 Norris 340 ; Morris's Appeal, 7 Id. 368.   The set of patterns in dispute was a part of the machinery essential to the foundry and necessary for carrying on the business in it.

*Thomas H. Baird,* for defendant in error.—No decision in the state can be found which, in the absence of a special contract of the parties, holds as a fixture any object or thing which in its nature and purpose is not susceptible of actual physical annexation or connection with the freehold.   The keys of a house, the deed of land, the doors, shutters, &c., of a building, the rolls in a rolling-mill, the burr stones in a grist-mill, the dogs in a saw-mill, the rails along a fence row, the manure on a farm, &c., all are instances where something actually adapted and intended for an appropriate place on the land or in the building, was held to be a fixture, although temporarily loose.

In the case of these patterns there is no annexation to or connection with the realty alleged or claimed ; nor is there any special adaptation to the uses of the freehold.   It is true, patterns are intended for use of foundries, but they are articles made for, and sold in the market ; and their presence or absence could only affect the value of an establishment to the amount of their market value. The adaptation required by the rule must be some special fitness and preparation as to purpose and place which would involve injury or loss to the freehold or the chattel by a severance.   Another condition required, is the intention of the party making the annexation, to make the article a permanent accession to the freehold. Such intention may be shown in various ways.   As in numerous instances, the mortgage or other instrument by its very terms may convert the lightest and most trifling chattel into real estate.   But in the case in hand, the mortgage is in the ordinary form and has nothing exceptional about it.

The judgment of the Supreme Court was entered November 26th 1880,

Per Curiam.—It is true physical annexation to realty is not necessary to convert a chattel into a fixture.   If the article, whether fast or loose, be indispensable in carrying on the specific business, it becomes a part of the realty : Morris's Appeal, 7 Norris 368 and cases there cited.   An article which would otherwise be deemed a fixture may, by severance and the understanding of the parties, become a chattel.   The stove pattern in contention had for a long time been treated as a chattel.   It had been taken from the foundry and removed about a mile therefrom to the residence of one to whom it was pledged as security for a debt.   This

[Sampson *v.* Graham.]

particular pattern was not essentially necessary for carrying on the foundry business. A pattern used to-day may be superseded by an improved pattern to-morrow, and be thrown aside as useless. The plaintiff in error had treated other patterns in the foundry as chattels, and levied on and sold them as such. This very issue assumes the property in question to be personalty. If it were realty the sheriff's hands would not have staid for the trial of this issue. If the pattern was a fixture and illegally severed this was not the proper action to try the ownership. Whether the learned judge was correct in declaring all the articles which he named were not fixtures we do not now decide, as it is not necessary in the determination of this case. Under all the evidence he was entirely right in holding this pattern was not a fixture.

Judgment affirmed.