## Franklin H. Muehling, Appellant, *v.* Charles Muehling and John H. Johnson.

*Mortgage—Fixtures—Contract—Evidence.*

Where a mortgagor agrees with a mortgagee to place machinery to a certain amount in the mortgaged premises the machinery will be considered fixtures subject to the mortgage, notwithstanding that some of it was placed in the building after the mortgage was executed.

It seems that without an agreement, fixtures attached to a building after the property is mortgaged, cannot be removed to the injury of the mortgagee: Roberts v. Bank, 19 Pa. 71.

*Fixtures—Mortgagor and mortgagee—Intention—Evidence.*

An agreement under which the members of a firm borrowed money to build a knitting mill and gave a mortgage, required the mortgagors to place therein the necessary machinery and to insure the same for the protection of the mortgagees. Sewing machines, hosiery knitters, and other machinery essential to the proper operation of the mill, were fastened to the floor, and run by the general steam plant. One of the mortgagors, in withdrawing from the firm, agreed to convey his interest in the real estate, machinery, etc., "subject to the mortgage." *Held*, that it was sufficient to warrant a finding that the parties intended to subject to the lien of the mortgage the machinery in the factory when the mortgage was executed and also the machinery subsequently placed therein by the mortgagors.

*Auditor's finding of facts—Evidence.*

The Supreme Court will not reverse an auditor's finding of facts approved by the court below if there was sufficient warrant for it in the evidence.

Argued March 9, 1897. Appeal, No. 2, Jan. T., 1897, by Franklin H. Muehling, from order of C. P. Monroe Co., Dec. T., 1894, No. 96, dismissing exceptions to auditor's report. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The case was referred to Cicero Gearhart, Esq., who reported as follows:

From the evidence it appears that Chas. Muehling and John H. Johnson were in the knitting mill business at Philadelphia prior to 1889. In the year 1889, several of the citizens of East Strouds-

burg went to Philadelphia to negotiate with the said Muehling
and Johnson for the purpose of having them remove their busi-
ness from Philadelphia to East Stroudsburg, and on Septem-
ber 11, of that year there was an agreement entered into between
James H. Shotwell, trustee for subscribers to aid in the erection
of a knitting mill in the borough of East Stroudsburg, of the
first part, and Chas. H. Muehling and John H. Johnson, part-
ners under the firm name of Muehling & Johnson, of the city
of Philadelphia, of the second part, in which agreement the said
party of the first part, inter alia, agrees to convey to the said
party of the second part a certain tract of land, with the build-
ings and improvements thereon erected, situate in the borough
of East Stroudsburg, containing three acres more or less, upon
the payment by them to him of the sum of $20,000, and upon
the execution and delivery to him from them of bonds in the
sum of $20,000, secured by mortgage on said lot or piece of
land, clear of all incumbrance; and said party of the first part
further agreed to pay the said parties of the second part the sum
of $20,000, which had been subscribed by divers citizens of East
Stroudsburg and vicinity to aid in the erection of a knitting
mill erected on said lot or piece of land; it being also contained
in said agreement that the building should be supplied with the
machinery necessary to run and operate the same, which machin-
ery should not be of less value than $10,000, and also that the
parties of the second part secure to the several persons the sums
by them respectively subscribed and advanced in the aid of the
erection of said knitting mill, by executing and delivering bonds
to be secured by a mortgage on said lot or piece of land, build-
ings and machinery, said mortgage to be given to J. H. Shot-
well, trustee as aforesaid, for the sum of $20,000.

On August 19, 1890, Chas. Muehling and John H. Johnson,
partners doing business under the name, style and firm of Mueh-
ling & Johnson, of the first part, executed a mortgage to J. H.
Shotwell, trustee, to secure the payment of two hundred bonds,
each for the sum of $100, aggregating a total sum of $20,000,
payable on July 1, 1900, with interest thereon from the 1st day
of July, 1890. This mortgage covers the tract of land men-
tioned in the agreement of September 11, 1889, and was made
in pursuance of the agreement therein contained.

The said Muehling and Johnson removed their knitting mill

plant from Philadelphia to East Stroudsburg the fore part of the year 1890. Mr. Johnson, the surviving member of the firm, testified as follows: " That when we began operations in East Stroudsburg the building was equipped with machinery, called Balmoral machinery, for manufacturing jersey cloth; also with winding machines and sewing machines. . . . I can only give an approximate figure of the estimated value of the machinery placed in the mill, for the manufacture of these jersey garments; that is in the neighborhood of $10,000, probably more, I don't know. I think we continued making the jersey garments about one and one half years after we came to East Stroudsburg; at this time we discovered that the jersey business was going out of style, and as a side issue we began the manufacture of hosiery, which necessitated getting other machinery, such as ribbed machines, knitters, loopers, and a steam press. . . . . The jersey business went out altogether, but we continued the hosiery and added ladies' cloaks and suits. The cloak and suit business was started in the fall of 1892. We got new sewing machines to carry on the cloak and suit business."

In the fall of 1890 the firm of Muehling and Johnson purchased a dynamo or electric light plant and placed it in their knitting mill at East Stroudsburg. This dynamo is a ten horse power and set upon trucks that were bolted to the floor, and was made so that it could be worked on a ratchet to loosen or tighten the belt. The power was transmitted from a counter shaft driven by the engine in the mill.

Muehling and Johnson dissolved partnership April 7, 1894. Mr. Johnson, upon the dissolution of the partnership, deeded his interest in the real estate to Mr. Muehling. The mill was then operated by Muehling in the name of Chas. Muehling & Company.

On December 20, Franklin H. Muehling entered in the court of common pleas of Monroe county, a judgment note, payable one day after date, and signed by Chas. Muehling and John H. Johnson, for the sum of $2,000, to No. 96, December term, 1894. On the same day he caused execution to be issued upon this judgment directing the sheriff of Monroe county, by virtue thereof, to levy upon the personal property of said Chas. Muehling & Company, to advertise and sell the same. The sheriff

levied upon said property as directed and advertised the same
to be sold on January 11, 1895. On January 9, 1895, two days
before the time of the sale as advertised, James H. Shotwell,
trustee as aforesaid, served a written notice upon the sheriff for-
bidding him to sell any sewing machines, or button-hole machines,
or any machinery fixtures in and about the knitting mill, claim-
ing that all said machinery, being a part of the fixtures and
machinery of said knitting mill, was covered by the mortgage
from Muehling & Johnson to said James H. Shotwell, trustee,
of August 19, 1890.

The sheriff on January 11, 1895, sold the personal property
of said Chas. Muehling, except the machinery in dispute, and
adjourned the sale of that to January 21, 1895, on which day an
agreement was entered into between James H. Shotwell, trus-
tee and mortgagee as aforesaid, and Frank H. Muehling, the
above named execution creditor, that the sheriff should sell the
machinery above mentioned and the money realized from said
sale to be paid into court, and the question there decided as to
whether the said machinery is personal property or fixtures, and
in the event of its being decided that they are personal property,
the fund realized therefrom to be distributed to the said Frank-
lin H. Muehling, and in the event of its being decided that said
machines are fixtures, the fund to be distributed to the said
James H. Shotwell, trustee.

The dynamo was not sold, and in said agreement it was also
agreed that the auditor shall decide if the dynamo is personal
property or a fixture, and that no further proceeding be taken
in relation to the dynamo, by either party, until the matter is
decided by the auditor or the court.

The sheriff's return to fi. fa., No. 7, February term, 1895,
states that by agreement the fund from the sale of the follow-
ing property is to be paid into court for distribution, viz:
Three (3) Wheeler button-hole machines, $11.00; seven (7)
ribbers, $155; one Davis machine, $5.00; twenty-one (21)
hosiery knitters, $85.00; six (6) Wilcox & Gibbs, $4.00;
steam press, $25.00; thirty-three (33) Wheeler & Wilson,
$170; three (3) Union special machines, $20.00; three (3)
Singer button-hole machines, $41.00, the whole amounting to
$516.

In pursuance of said agreement, the said sum of $516 was

paid into court, and your auditor appointed to make distribution of the same.

Attorneys Kotz and Brittain, who appeared for Franklin H. Muehling, execution creditor, claimed to have distributed to their client the entire fund, for the reason that the machinery sold by the sheriff is personal property and not a fixture, and therefore said fund belonged to their client and not to the mortgagee. Attorney Chas. B. Staples, who appeared for James H. Shotwell, trustee as aforesaid, claimed that said sewing machines, button-hole machines, hosiery knitters, and ribbers, etc., sold by the sheriff were fixtures belonging to the knitting mill and upon the land covered by the mortgage, at the time the said fi. fa., No. 7, February term, 1895, issued, and therefore the fund for distribution must be distributed to the mortgagee. Your auditor by agreement is also asked to decide the question as to whether the dynamo in said knitting mill is a fixture or a personalty.

We will first consider the question in relation to the machines in dispute and sold by the sheriff as contained in his return. If we find these machines to be personalty, the fund for distribution, less costs of this audit, must be distributed to Frank H. Muehling, the execution creditor; but if we find that the same are fixtures and attached to the realty, the fund must, under the agreement, be distributed to James H. Shotwell, mortgagee. . . . Before they were placed in the mill they were personalty. If by being placed in the mill they became realty, what made them so? What constitutes a legal incorporation or conversion of a chattel into the realty? Unquestionably, in a case of this kind, the intention to annex, whether rightfully or wrongfully, is the true legal criterion. Mere physical annexation is no longer the test; and such annexation can only be considered in so far as it may go to show what the intention, if any, to annex was, as the secret purpose of the actor cannot be known, but upon the inferences to be drawn from what is external and visible. The intention to be sought is not the undisclosed purpose of the actor, but the intention implied and manifested by his act. These machines were purchased by Muehling and Johnson, and placed in their mill at East Stroudsburg. On April 3, 1894, the firm of Muehling & Johnson was dissolved, Johnson withdrawing from same. In the agreement

of dissolution entered into that day the said John H. Johnson did grant, assign, transfer, sell and set over unto the said Chas. Muehling, his heirs and assigns, all the right property, and interest whatsoever which he, the said John H. Johnson, has or should have in all and singular the lands and tenements, the buildings erected thereon, the machinery and fixtures therein, constituting their factory in the said borough of East Stroudsburg, and also all goods, wares, merchandise, bank account, stocks, debts and bills receivable belonging to or owing to the said firm of Muehling and Johnson, wheresoever the same may be or be situate. According to this agreement of dissolution made April 3, 1894, the machinery and fixtures in the mill constituted the factory on the land covered by the mortgage. The partners themselves seem to have treated these machines and fixtures as part of the factory, or rather as realty. No bill of sale passed between them at that time or any other time. Mr. Johnson says they dissolved partnership April 7, 1894; on that day Johnson and his wife deeded the equal undivided one half interest in the knitting mill premises to Muehling. No other paper seems to have passed between them in relation to the dissolution of the firm, save the agreement of April 3, 1894.

From the evidence submitted to your auditor, together with the papers and agreements placed in evidence, the following facts appear:

1. That the sewing machines, hosiery knitters, steam press, button-hole machines and ribbers were fastened to tables and the floor in the factory, and run by belts attached to shafting, run by the general steam plant of the mill.

2. That the said sewing machines, hosiery knitters, steam press, button-hole machines and ribbers were so placed in said mill as to become affixed to the freehold. The intention of the said Muehling and Johnson being at the time of placing them in the mill to have them to constitute a part of their factory, we think that the machinery sold by the sheriff was realty, and not personalty, and therefore, nothing remains but to make distribution in accordance with these views. What has been said in relation to the machines may also practically be said in relation to the dynamo. This dynamo was purchased by Mr. Johnson, of the firm of Muehling & Johnson, in the fall of 1892, a few months after the firm began operating the mill, and was

used constantly for the purpose of lighting the mill in operating the same, up to the time of the levy and sale by the sheriff. In the agreement of dissolution between Muehling and Johnson entered into April 3, 1894, the said John H. Johnson agreed to grant, assign, transfer, set over unto the said Muehling, his heirs and assigns, all the right, property and interest, which the said Johnson has or should have in the lands, tenements and buildings erected thereon, machinery and fixtures therein, constituting their factory in the said borough of East Stroudsburg, and that the said Johnson and his wife will make and execute a good and sufficient deed, conveying to the said Muehling, his heirs and assigns, the equal undivided one half interest of said Johnson, to and in the real estate, buildings, machinery and fixtures connected therewith.

We think there can be no question that the parties themselves intended this dynamo, as well as the machines in dispute, to constitute a part of their factory at the time of dissolution. We find nothing that Muehling did from that time to the time of issuing execution, the levy and sale by the sheriff, to change this condition of things. Moreover, we believe that the machines and dynamo were so placed in the mill and affixed to the freehold as would justify anyone about to purchase the factory to believe, from the circumstances surrounding the machines and the dynamo that it was the owner's intention to leave the machines and dynamo, and not take them away.

We, therefore, decide that the dynamo must be treated as realty and not personalty, as well as the machines; and are led to the above conclusion from our finding, as a fact, that Muehling and Johnson intended the machines in dispute and sold by the sheriff, also the dynamo, to be a part of their manufacturing plant.

The court in an opinion by CRAIG, P. J., dismissed exceptions to the auditor's report.

*Errors assigned* were in dismissing exceptions to the auditor's report.

*Henry J. Kotz* and *Edward A. Anderson*, with them *A. R. Brittain*, for appellant.—When the chattel is annexed after giving the mortgage, and is of doubtful character, there must be stronger evidence of intention to make a permanent accession to the free-

hold than if it were annexed prior to or at the time of giving the mortgage: Tillman v. DeLacy, 80 Ala. 103; Clore v. Lambert, 78 Ky. 224.

Whether the machinery (hosiery) of a mill is included within a purchase money mortgage is to be determined by the intention of the parties as shown by their conduct and the circumstances of the case: Price et al. v. Jenks, 37 Leg. Int. 398; Nat. Bank of Catasauqua v. North, 160 Pa. 303.

*Charles B. Staples*, with him *W. A. Erdman*, for appellees.— An auditor's findings of fact approved by the court below will not be reversed by the Supreme Court except for clear error: Nauman's App., 116 Pa. 505; Hess's Est., 150 Pa. 350; Prouty v. Prouty, etc., Co., 155 Pa. 112; Donaldson's Est., 158 Pa. 292.

The machinery was a fixture: Morris's App., 88 Pa. 384; Christian v. Dripps, 28 Pa. 271; Roberts v. Dauphin Deposit Bank, 19 Pa. 76; Ott v. Sweatman, 166 Pa. 227.

OPINION BY MR. JUSTICE McCOLLUM, May 27, 1897:

The question to be determined on this appeal is whether the hosiery knitters, ribbers, steam press and dynamo purchased for and placed in the knitting mill, by the owners thereof, were intended by them as component parts of their factory, and subject to the lien of the mortgage upon it, or as personalty subject to removal by them at their pleasure and against the protest of their mortgagee. The learned auditor to whom the question was referred found as a fact that it was their intention in placing this machinery in the mill to place it there as fixtures and a constituent part of their factory. This finding was approved by the learned court below, and, if there was a sufficient warrant for it in the evidence, we cannot reverse it.

We have carefully read and considered all the evidence oral and documentary, and our conclusion from it accords with the finding in question. The agreement of September 11, 1889, under which the money for the erection of the factory was furnished, and in pursuance of which the factory was mortgaged, contained a requirement by the mortgagee and a promise by the mortgagors which bound the latter to place in the factory for the proper operation of it, machinery worth at least $10,000, and to maintain an adequate insurance thereon for the protection

of the former. It seems to us that this agreement is in clear accord with the view that it was the intention of the mortgagors that all the machinery employed in the operation of the factory should constitute a component part of it. The manner in which the machinery was connected with the factory and the fact that it was deemed essential to the proper performance of the work done there are circumstances corroborative of this view. The mortgage was executed in conformity with the agreement, and the parties to it seem to have understood that it included the machinery as well as the buildings with which it was connected. When Johnson withdrew from the partnership of Muehling & Johnson he agreed to convey to Muehling his interest in the real estate, buildings, machinery and fixtures connected therewith, subject to the mortgage. This agreement shows that he considered the machinery and fixtures as real estate on which the mortgage was a lien. The learned counsel for the appellant appear to concede that the machinery in the factory when the mortgage was executed was included in and bound by the latter, but they claim that the machinery in question was put in the factory subsequent to the execution of the mortgage, and is not subject to the lien of it. As sustaining this view they cite Tillman v. DeLacy, 80 Ala. 103, and Clare v. Lambert, 78 Ky. 224. These cases are referred to as authority for the proposition that " where the chattel is annexed after giving the mortgage, and is of doubtful character, there must be stronger evidence of intention to make a permanent accession to the freehold than if it were annexed prior to or at the time of giving the mortgage." But this proposition, if sustained by the cases cited, furnishes no ground for reversing the finding in question, because the evidence to support it is ample. Besides, our own cases seem to hold a different view. In Roberts v. The Dauphin Deposit Bank, 19 Pa. 71, a steam engine and boilers were detached from a property covered by a mortgage, and it was sought to justify the severance on the ground that they were attached after the property was mortgaged, and it was held that " though the engine and boilers were put up after the mortgage to the plaintiff was given they constituted a part of the mortgage security, and they were not liable to removal by the mortgagor or her assigns if such removal was injurious to the mortgagee, who has a right to benefit from any appreciation of the mortgaged

premises arising from any cause." See also on this point Morris's Appeal, 88 Pa. 368.

Decree affirmed and appeal dismissed, the costs to be paid by the appellant.