## In re EAST STROUDSBURG GLASS CO.

(District Court, M. D. Pennsylvania. December 22, 1917.)

No. 3528.

1. CHATTEL MORTGAGES ⊕⇒116—CONSTRUCTION—FIXTURES.

A bankrupt corporation, which was engaged in the business of manufacturing glass bottles, mortgaged all its buildings, machinery, plant, tools, equipment, and franchises necessary for the operation of its business. The plant, aside from buildings, consisted of a tank where the material for the making of glass was melted. The tank was located in the center of the main building and had a number of openings through which the glass material is removed by the workmen and molded into bottles, some of the work being done by hand and some by machinery. The machines for molding bottles were attached to the furnace, as were the molds used in connection with such machines. *Held*, that the hand molds, as well as the machine molds, passed under the mortgage, whether such molds were fast or loose, being a part of the freehold necessary to the carrying on of the manufacturing operations.

2. CHATTEL MORTGAGES ⊕⇒124—CONSTRUCTION—AFTER-ACQUIRED PROPERTY.

In such case, machines and molds added since the plant was mortgaged became an integral part of the factory or plant, and passed equally under the mortgage with the portion originally aliened.

In Bankruptcy. In the matter of the East Stroudsburg Glass Company. The trustee petitioned the court to restrain the sale of certain of the bankrupt's property by the Security Trust Company, as trustee for bondholders secured by a mortgage, on the ground that it was not bound by the lien of the mortgage. The court permitted a sale of all the property, directing that the proceeds should be kept separate. On rule to show cause why restraining order should not be made permanent. Rule dismissed, and proceeds awarded to the lien creditor.

Eilenberger & Huffman, of Stroudsburg, Pa., for trustee for bondholders.

A. Mitchell Palmer and C. R. Bensinger, both of Stroudsburg, Pa., for trustee.

WITMER, District Judge. [1] The Security Trust Company, of Stroudsburg, Pa., as trustee for the bondholders of a certain mortgage aggregating $50,000, upon their judgment, through scire facias sur mortgage, obtained from the court of common pleas of Monroe county a writ of levari facias, upon which the sheriff levied and advertised for sale, in the language of the conditions of the mortgage:

"All buildings, machinery, plant, tools, equipment, and franchises which are necessary, useful, or convenient for use, maintenance, or operation of its business, and also all renewals, replacements, additions, betterments, improvements, enlargements, and extensions thereof and thereto, now or hereafter belonging to said company," including the following: 380 hand molds, assorted sizes and kinds; 202 machine molds, assorted sizes and kinds; 129 set bottle finishing tools; 2 O'Niel narrow-mouthed blowing machines.

The trustee for the bankrupt's creditors petitioned the court to restrain the sale of this property on the ground that the same was not

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bound by the lien of the mortgage, and that it formed part of the general unpledged assets of the estate. The court, after hearing, being satisfied that it would be to the best interest of the party ultimately succeeding in establishing title to the property in dispute that the same should be sold by the sheriff, when the plant or real estate of the bankrupt company was offered for sale, ordered and directed that the restraining order be released, and permitted the sheriff to sell such property, at the time stated, offering each parcel or item of property by itself, and then and there retain separately and apart the proceeds or moneys realized for each item until and for the further order of the court.

The question remaining to be disposed of, in determining the ownership of the proceeds derived from such sale, has to do with the title to the property in dispute, whether belonging to the execution plaintiffs, bound by the lien of their mortgage, or whether free from such, having passed to the trustee for the bankrupt's unsecured creditors. Answer to these questions depends much, if not altogether, upon the use of these articles in connection with the bankrupt's business, that of manufacturing glass bottles.

The machines, molds, and tools were found in the bankrupt's plant, where they were in use for some years. It may be that some of the molds were old and beyond usefulness, as is ordinarily to be supposed; but the testimony is not clear upon this point, and, failing to distinguish, the inference remains that all were useful in connection with the business. The plant, in the main, aside from the buildings, consists of a furnace or tank, where the material that goes into the making of glass is heated and transformed into a molten semiliquid mass. The tank is located in the center of the main building and has a number of openings in it, known as "rings." Through these rings the glass material in its heated condition is removed from the furnace by the workmen or blowers, and molded or shaped into glass bottles. This may be done by hand or machinery. Formerly all glass blowing and shaping was by hand, which has now by modern improvement and invention given way to machinery. It is admitted that the latter method, that by machinery, is the more successful, being both economic and productive of uniformity in the required product.

In the bankrupt's plant, bottles were made by hand and by machine. The finishing tools in dispute are the instruments used by the hand blowers and the machines when the operation is by machinery. The molds in each case are the necessary and essential part to give the product its required shape. The machines were placed in position for operation by cutting sections of the foot bench along the furnace, on which the hand operators worked. They were placed in these sections close to and against the furnace and attached to the air system when in operation. The molds used in connection with the machines were also attached to it; however, it matters little, if any, whether any of these machines, tools, and molds were in any manner actually and physically attached to or affixed to any portion of the real estate. They were apparently so absolutely essential as instruments to the successful operation of the bankrupt's plant that they must be regarded as

part of it. Without these instruments, or others of like kind, the business for which the plant was erected could not have been carried on, and so the case is brought within the rule laid down by Judge Gibson, in Voorhis v. Freeman, 2 Watts & S. (Pa.) 116, 37 Am. Dec. 490, where he said:

"Whether fast or loose, thereof, all of the machinery of a manufactory, which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold."

That this rule has been uniformly followed in similar cases since then will appear from the following, which may be consulted, if further authorities are of importance: Pyle v. Pennock, 2 Watts & S. (Pa.) 390, 37 Am. Dec. 517; Edge v. Kille, 84 Pa. 333; Morris' Appeal, 88 Pa. 383; Sampson v. Graham, 96 Pa. 405.

[2] Nor does it matter that the machines and some of the molds were added since the plant was mortgaged. As they were introduced, they became an integral part of the factory or plant, and so became equally bound under the mortgage with the portion originally aliened. Roberts v. Bank, 19 Pa. 71; Muehling v. Muehling, 181 Pa. 483, 37 Atl. 527, 59 Am. St. Rep. 674.

The rule to show cause is dismissed, and the proceeds of the sale of the items herein mentioned are awarded to the lien creditor.