## In re ERIE LITHOGRAPH CO.

(District Court, W. D. Pennsylvania. January, 1919.)

BANKRUPTCY ☞188(1)—MACHINERY IN PLACE COVERED BY MORTGAGE OF PLANT.
Machinery placed in its lithographing plant by bankrupt under bailments or leases, with an option to purchase, but title reserved in the bailors, *held*, as against the trustee and creditors, to pass under a mortgage of the plant and machinery therein; the rights of the bailors not being involved.

In Bankruptcy. In the matter of the Erie Lithograph Company, bankrupt. On question certified by referee. Order of referee reversed.

George M. Mason, of Erie, Pa., for trustee.
Lewis M. Alpern, of Pittsburgh, Pa., for mortgagee.

ORR, District Judge. The referee has certified to this court, at the instance of an assignee of one of the mortgages hereinafter referred to, the following question:

"Whether, where more than four months prior to proceedings in bankruptcy the bankrupt corporation procured certain machinery, equipment, etc., used in the operation of their plant, which said property was held under bailment or leases from the owners thereof, the said bailment or leases providing for payment of certain rental for a specified term at the expiration of which said property was to be returned to the bailors or lessors, coupled with an option to buy at a price stipulated, and said property was placed on premises covered by a mortgage or mortgages, which said mortgages contained a clause that it should be a lien on all machinery, fixtures, equipment, etc., then on the premises or thereafter to be acquired by said mortgagor, such property so leased becomes subject to the lien of said mortgages."

It seems clear that the answer to this question depends upon the person who makes the inquiry. The mortgagor and those who succeed to the title of the mortgagor would not be entitled to an answer in the negative, whereas the paramount owners of the property (to wit, the bailors), against whose rights the mortgagor attempted to pledge the bailed property, would be entitled to an answer in the negative. The answer given by the referee was an answer to the trustee in bankruptcy of the mortgagor, and therefore a successor to the mortgagor's title and was in the negative. As we shall see, the referee was in error.

The particular mortgage before the court was executed and delivered on the 23d of January, 1917. It covers the real estate, describing the same by metes and bounds, after which there follows this language:

"Having erected thereon a large brick building, and two smaller buildings, together with engines, boilers, elevators, and such shafting wire, etc., as are attached to the buildings, also containing machinery, equipment, and fixtures constituting the plant of Erie Lithograph Company together with the land, buildings, machinery, fixtures, and property of Erie Lithograph Company, now owned or which may be hereafter acquired by it."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At the time of the execution of the mortgage there were on the premises, constituting part of its plant, certain rotary lithograph presses, certain electric motors, and other property, all of which has been delivered to the mortgagor under contracts of bailment, commonly designated as leases, which provided for payments of rentals from time to time, and with the privilege of purchase after the rentals had been paid. The several bailors, after the institution of the proceedings in bankruptcy, presented their several petitions to have the trustee return the several subjects of bailment, or pay the balance of rental which might be due under the respective contracts. The referee has made an order directing the trustee to sell the presses and other property, which were the subjects of bailment in the several leases, and this, notwithstanding objection by the assignee of said second mortgage.

It is perfectly clear, under the law of Pennsylvania, that if the presses and other property had been purchased outright by the Erie Lithograph Company, in such case they would be embraced within the terms of the mortgage. See In re East Stroudsburg Glass Co. (D. C.) 247 Fed. 614; In re Beeg (D. C. Pa.) 25 Am. Bankr. Rep. 572, 184 Fed. 522, and authorities referred to in said cases. It is also perfectly clear that if all the sums specified to be paid as rentals in the different contracts of bailment had been paid, and the corporation had elected to purchase the bailed articles prior to the date of the mortgage, the mortgage creditor would have been entitled to hold the same as against any subsequent creditors of the mortgagor, and as against the bailors themselves.

Inasmuch as there is no question of preferential or fraudulent transfer in this case, the general creditors of the bankrupt have no standing to impeach the validity of the mortgage; nor has the trustee in bankruptcy such standing, because, under the amendment to the Bankruptcy Law, passed June 25, 1910, he is vested only with rights, remedies, and powers of creditors. Subsequent creditors could not enforce any remedies by levy upon property of the bailors, because, as between such creditors and the bailors, the bailors have a title paramount to that of the bailee. As to such creditors, the bailed chattels are subject to the mortgage on the printing plant, although, as to the bailors, such chattels might not be subjected to the mortgage without their consent.

The case of Hill v. Sewald, 53 Pa. 271, 91 Am. Dec. 209, was a case which was brought to the attention of the learned referee, and was relied upon by the attorneys for the trustee as one in support of the trustee's position. The facts in that case are briefly as follows: The Sewalds conveyed to Snodgrass a piece of ground on which was a steam mill, and took a mortgage from him for a balance of purchase money. The boilers in the mill, becoming worn out, were removed, and one Hill, by agreement with Snodgrass, placed some boilers belonging to himself in the mill, under an agreement that he was to be paid $4 a month for their use and have the right to remove them whenever he pleased. The boilers remained attached to the mill and

continued to be used as part of its motive power for some years, when the premises were sold by the sheriff and repurchased by the Sewalds upon a judgment recovered by them for the balance due on the mortgage. At the time of the sheriff's sale, notice was given to the bidders of Hill's claim. Hill subsequently demanded his boilers from the purchasers at sheriff's sale, who were the original mortgagees, and upon their refusal brought his suit. The court below entered judgment for the defendant, holding that Hill could not maintain his action. The Supreme Court reversed.

It is apparent that the controversy in Hill v. Sewald was not between creditors of the bailee, but was between the mortgagees and Hill, whose ownership of the boilers was paramount to any title of the mortgagor. So, also, Case v. L'Oeble (C. C.) 84 Fed. 582, which was also brought to the attention of the referee, and was relied upon by counsel for the bankrupt in this court, was an action of replevin brought by the paramount owner against one taking title under a mortgage.

While it is a general rule that the intent of the parties to a contract of bailment, as set forth in said contract, must be controlling as between them, no case has been brought to our attention holding that the intent of a mortgagor which embraces within its mortgage the subject-matter of the bailment can be questioned by any person, except by the other party to the contract of bailment. The situation is somewhat analogous to a situation where a mortgagor does not own the real estate which is the subject of his mortgage. No subsequent creditor of the mortgagor could impeach the interest of the mortgagee under his mortgage. The paramount owner alone could defeat the mortgagee's title.

The bailors in the case at bar have received most of their rentals. They have filed petitions with the referee, asking for the return of their property, or the payment of the balances due. It was stated at the argument in this court, and not denied, that these bailors were all willing that the mortgagee, upon payment of the balances due, should have such benefits as the mortgagor might have had, had the rentals been paid in full. Equity seems to suggest that the mortgage creditor should be accorded the privilege of having the bailed chattels included within the security of the mortgage, because such was the intent of the mortgagor, as ascertained from the terms of the mortgage, and because, under the evidence in the case, the mortgagee believed that the chattels were security for the mortgage debt, because they were parts of the plant necessary to the operation thereof.

The certified question, therefore, inasmuch as it may be treated as the question asked by the trustee, must be answered in the affirmative; the decision of the referee must be reversed, and his order directing sale of the bailed chattels set aside. Inasmuch as his order of sale covers other property in addition to the chattels subject to the bailment, if a specific order is needed separating those chattels which should be sold and those which should not be sold, such order will be made on presentation, after notice.