## City of Philadelphia, Trustee, v. Kugler's Restaurant Company et al.

*Joseph P. Gaffney,* for plaintiff.

*Clarence K. Gundaker* and *Wesley H. Caldwell,* for defendant.

SMITH, P. J., January 2, 1945.—This matter came before the court on final hearing after the court had granted a preliminary injunction restraining defendants and each of them from taking certain articles of property out of premises 30, 32, 34, and 36 South Fifteenth Street, in the City of Philadelphia, Pa. . . .

### Discussion

Kugler's Restaurant Company is a well-known restaurant that has operated for a number of years in

the City of Philadelphia. In 1913 Philadelphia Central Realty Company was incorporated for the purpose of acquiring and holding real estate by fee simple or lease. The stock of this corporation was owned or controlled by Kugler's Restaurant Company and the same corporate officers acted for the two companies. In 1913 Philadelphia Central Realty Company purchased in fee simple a property situate at 30-36 South Fifteenth Street, Philadelphia, with the buildings and improvements thereon erected. In 1918 Kugler's Restaurant Company moved its business from another location onto the said premises under a lease from the realty company. On April 16, 1923, the realty company conveyed said premises to Winfield S. Parker, an employe of the restaurant company. This property was reconveyed by him to the realty company on April 16, 1923, and again on April 12, 1928, was conveyed by the realty company to the said Winfield S. Parker for the purpose of securing a mortgage loan on the said premises, to take the place of a mortgage already on the said premises. An application was made to the City of Philadelphia, trustee under the will of Stephen Girard, deceased, by the realty company and the restaurant company in the sum of $850,000. This mortgage application was signed by William B. Kugler in his capacity as president of the realty company and of the restaurant company. The loan was made and Winfield S. Parker, the straw man, made and executed and delivered a mortgage on said premises covering all and singular the buildings then erected or thereafter to be erected thereon, machinery, elevators, dynamos, engines, boilers, fixtures, and equipment then in or upon the said premises. On the same day the said Winfield S. Parker then reconveyed the title of the said property to the said realty company subject to the terms of the said mortgage. Subsequent to the execution of the said mortgage, the realty company and/or the restaurant company caused to be placed in the basement of the

property aforesaid certain mechanical devices, fixtures, and equipment. In a separate room in the basement set aside for that purpose, they installed electric transformers and capacitors with an oil switch. The purpose of the installation of a 2300-volt service P. E. 822 and a P. E. 813, being two banks of transformers with two transformers in each bank and with a bank of capacitors with an oil switch thereto, was to provide an economical system for the operation of the business of the said restaurant plant. They are the primary supply of current for this building from the Philadelphia Electric Company and are a necessary and essential part of the maintenance and operation of this extensive industry. They were made a permanent part of the said plant. During the operation of the said restaurant business it was found that the air-cooling system then installed was not adequate or satisfactory. The engineering department of the Board of City Trusts was consulted about the system and its advice sought as to what improvements or additions might be made. The engineer of the Board of City Trusts advised the discontinuance of a silica jell system and the installation of a modern Freon system. Two boilers were removed and the Freon machine with motors (a heavy piece of machinery) was installed and fastened to a solid concrete base and made a part of the system with the air channels which cooled the air in the restaurant during the summer months and heated it in the winter. The installation of this machinery, fixtures, and equipment was a necessary and essential part of the air-conditioning system on the premises and was likewise necessary and essential for the operation of this extensive restaurant business and was made a permanent part of the plant of this business.

It is argued by the defendants that the aforesaid machinery and equipment can be removed without doing substantial damage to the premises. It may be conceded that the Freon machine could be unbolted from

its concrete foundations with little practical damage to the structure, and that the transformers and capacitors could be likewise removed from the transformer room by the removal of certain bolts that fasten them to the building, but we do not believe that this is the real test. In Commonwealth Trust Company of Pittsburgh v. Harkins et al., 312 Pa. 402, 407, in an opinion by Mr. Justice Schaffer, it was stated:

" 'The Pennsylvania rule is that a chattel placed in an industrial establishment for permanent use, and necessary to the operation of the plant, becomes a fixture and as such a part of the real estate, although not physically attached thereto; in other words, if the article, whether fast or loose, be indispensable in carrying on the specific business, it becomes a part of the realty. . . . Whatever is a necessary part of the machinery for carrying on the business is a fixture irrespective of the manner of its attachment.' "

A fair deduction from all the circumstances surrounding the installation of the machinery, fixtures, and equipment aforesaid is that they were installed in this extensive restaurant business so that they should be of a permanent nature, and that they were essential and necessary to a successful operation of this business and an integral part of its plant. This large and well-known restaurant was engaged in the business of preparing, cooking, and serving a variety of meals and foodstuffs for public consumption and its trade. The Freon equipment and fixtures as installed were essential to the proper conduct of a complete business. In fact, the plant of the restaurant in its complete entirety was necessary for the successful operation of this restaurant and the comfort of its patrons. Likewise the installation of the transformers cut down the operating expenses of this business and was a necessary part of the plant and equipment. These fixtures, machinery, and equipment by their affixation became a part of the freehold and title thereto passed with the

sale under the mortgage foreclosure. The fact that the machinery, fixtures, and equipment were installed subsequent to the execution of the mortgage does not alter our view. In Pennsylvania Chocolate Co. for use v. Hershey Bros. (No. 1), 316 Pa. 292, 299, Mr. Justice Schaffer said:

"The fact that the additional equipment in this case was installed long after the mortgage was given did not prevent its becoming additional security for the benefit of the mortgagee. As was said many years ago in Roberts v. Dauphin Bank, 19 Pa. 71, 'As the mortgagee may suffer by the depreciation of the property, arising from fluctuations in value, from accident and from neglect, so he may be benefited by its appreciation, whether the same arises from the proper cultivation and improvement of the property, or from any other cause. No other rule could be at all practical.' "

While the law in most of the cases applies to plants manufacturing textiles, machinery, etc., we believe that it also applies to any plant making products of any nature for sale. In Pennsylvania Chocolate Co. v. Hershey Bros., supra, the plant made candies. In the case of Holland Furnace Co. v. Suzik et ux., 118 Pa. Superior Ct. 405, 409, Baldrige, J., said:

"True, the cases to which we have referred deal with the installation of machinery or equipment in manufacturing plants. Nevertheless, we think the principle is equally applicable to dwellings. Judge Reader, in the course of his opinion, very well states that in these modern days a dwelling house essentially consists not only of the foundation, walls, roof, partitions, floors, etc., but lighting, heating, plumbing and sewage disposal systems also are regarded integral parts thereof. It is generally known that very few homes are now constructed without provisions for the installing of a furnace in the cellar. A heating plant is regarded as indispensable in this climate, and is usually considered a component part of the building.

"Although this furnace might have been removed without serious injury to either the furnace or the house, its removal would have completely destroyed the heating system."

The test is whether the machinery or equipment installed in a structure is a component part of the building in which it is installed and is necessary for its operation as a complete going concern: McClure v. Atlantic Rock Co., Inc., 339 Pa. 296, 301.

We believe that the facts of the present case are within the qualifications set forth in the above case.

The fact that the mortgage was executed by Parker does not alter matters. He was acting on behalf of Philadelphia Central Realty Company and/or Kugler's Restaurant Company. In the case of Commonwealth Trust Company of Pittsburgh v. Harkins et al., 312 Pa. 402, 411, Mr. Justice Schaffer said:

"Appellants base much of their argument on the statement: 'The mortgage was made by an individual named Harkins. Its payment was subsequently assumed by the Miller Printing Machinery Company, but in the assumption of payment the obligation of the Miller Printing Machinery Company did not extend beyond the obligation assumed by Harkins, the mortgagor.' This entirely ignores the true situation, which was that Harkins executed the mortgage as a straw man for the printing machinery company and that its purpose was to mortgage its complete manufacturing plant."

The fact that the machinery and equipment and fixtures were brought upon the premises by the lessee has been answered in the case of McClure v. Atlantic Rock Co., Inc., supra, where Mr. Justice Barnes said (p. 302) :

"The fact that the machinery and equipment here involved were brought upon the premises by a lessee, rather than by the mortgagor, does not affect our conclusion. The rights of the lessee could rise no higher

than those of its landlord, the mortgagor. The existence of the prior mortgage and its terms, were matters of record and should have been known to both the lessee and the plaintiff creditor."

The title to the property, machinery, fixtures, and equipment passing to the purchaser at the sheriff's sale upon the foreclosure of the said mortgage, the City of Philadelphia, trustee as aforesaid, is entitled to an order restraining the said defendants, or either of them, from removing said fixtures, machinery, and equipment from the said real estate. Such articles of property which had been affixed to the said real estate and removed by the defendants, or either of them, must be returned to the said premises. We make reference to the said Johnson air compressor or such parts thereof as have been removed from the said premises. . . .

### Decree nisi

And now, to wit, January 2, 1945, it is ordered, adjudged, and decreed that the City of Philadelphia, trustee under the will of Stephen Girard, deceased, is the exclusive owner of the machinery, equipment, and fixtures mentioned and described in the said bill of complaint. Kugler's Restaurant Company, its agents, servants, and employes, are specifically enjoined from removing or causing to be removed the said machinery, fixtures, and equipment from the said premises 30-36 South Fifteenth Street, Philadelphia, or from selling or otherwise disposing of them to any person or persons otherwise than the City of Philadelphia, trustee as aforesaid. Kugler's Restaurant Company and/or Philadelphia Central Realty Company is directed to return to the City of Philadelphia, trustee as aforesaid, the Johnson air compressor or such parts thereof that have been removed by them or either of them, to the said premises; cost to be paid by the said defendants.

The prothonotary will notify the parties of the entry of this decree nisi and, unless exceptions be filed within

ten days of the date hereof, will enter it as the final decree in the matter without further order.

NOTE.—Exceptions to the foregoing adjudication and decree nisi were subsequently withdrawn, and a final decree entered accordingly.