Pangburn v. American Vault, Safe & Lock Company (No. 2).

*Receivers—Negligence—Fraud—Compensation.*

Where a receiver has been negligent in the management of the trust estate, has wasted its assets, and has procured a sale of the personal property of the estate at an inadequate price, and has been interested therein as a purchaser without disclosing that fact to the court, he will be surcharged with the loss, and his commissions disallowed.

Argued Oct. 30, 1902. Appeal, No. 105, Oct. T., 1902, by Josiah Speer, receiver, from decree of C. P. No. 2, Allegheny County, Jan. T., 1894, on bill in equity in case of E. H. Pangburn, E. E. Pangburn and C. L. Elliott, trading as Elizabeth Planing Mill Company, v. American Vault, Safe & Lock Company. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Bill in equity for a receiver.

The report of R. C. Rankin, Esq., auditor, was as follows:

FINDINGS OF FACTS.

(1) Josiah Speer was appointed receiver of the property and assets of the American Vault, Safe & Lock Company by decree of this court made October 11, 1893, and immediately took possession of the property of the company.

(2) As such receiver, there came into his possession among the assets of the company merchandise consisting of finished and unfinished safes, raw materials, and so forth, to the amount of $36,088.89, bills and accounts receivable, $3,269.75, and real estate, plants, tools and other property of the company.

(3) The receiver operated the works of the company from the date of his appointment until after September 29, 1894, and

this was done by him upon his own responsibility, without any authority from the court, with the exception of a contract known as the Pennsylvania Railroad contract, on which contract he lost $1,244.01.

(4) On September 29, 1894, the receiver, at public sale, under order of court, sold the unoccupied real estate of the company to J. R. Wylie for $2,000, which sale was confirmed by the court absolutely, and the money paid to the receiver.

(5) On the same day at a like sale, he sold the remaining real estate and plant of the company, and the personal property then on hand, to Hugh Morrison, at $10,000, for the real estate and $1,300 for the personal property. This sale was confirmed absolutely on October 20, 1894. It was subsequently set aside by an order made January 13, 1896. On June 20, 1899, at the request of the receiver, he was permitted to make a sale of the property to M. M. Garland, at $10,000 for the real estate and $1,300 for the personal property, the said Garland to take the property as of September 29, 1894, receiving the benefits of all sales made by the receiver after September 29, 1894, and assuming all expenses incurred by the receiver after that date with respect to the said property. The sale to M. M. Garland was consummated by the receiver, and the purchase money paid. The expenses in connection with the sales of the real estate, as shown by the accounts, amount to $936.15, and the net proceeds from sales of real estate for distribution amount to $11,063.85.

(6) The purchase made by Hugh Morrison, as well as the purchase made by M. M. Garland, was each, in point of fact, made on behalf of the syndicate, and the said receiver, Josiah Speer, was a member of each of said syndicates, and interested in the purchase of the property, and this fact was not disclosed by him until long after the sale to Garland.

(7) That the value of the personal property sold by the receiver to M. M. Garland, under the order above mentioned, was $20,506.95, this amount being the value of the merchandise on hand at the date of the McMeans inventory, $18,106.80, and the net cash receipts in the hands of the receiver or the purchaser, $2,400.15.

(8) The receiver was negligent in his management of the trust estate, and wasted the assets thereof; his action towards the court and creditors has been characterized by an absence of

good faith; his action in procuring the sale of the remaining personal property on hand, at an inadequate price, and being interested therein as a purchaser, without disclosing that fact, was inexcusable, and because of these facts he has forfeited his right to commissions.

### THE LAW OF THE CASE.

As this case presents itself to your auditor, there are but three questions of law involved, viz:

1. As to the liability of the receiver for the loss, or some part thereof, incurred by him in the operation of the works.

2. As to the liability of the receiver for the loss incurred in the sale to Garland, in view of the fact that the receiver was one of the purchasers at this sale.

3. As to the receiver's right to commissions.

1. As to the liability of the receiver for the loss incurred in the operation of the works.

The receiver having operated the works without authority from the court, it is sufficient to show the inventory and appraisement, and the burden is upon him to explain and account for the property: McCay v. Black, 14 Phila. 635. That the receiver thoroughly appreciated this fact appears from his testimony, in which he says very frankly that in operating the works he acted upon his own responsibility. That the operation of the works resulted in a large loss does not now admit of doubt. The expenses incurred by the receiver in the operation of the works not only exceeded his receipts, but, as shown by the findings of fact, his expenses exceeded the value of the merchandise coming into his possession and disposed of prior to September 29, 1894, plus all the moneys realized from bills and accounts receivable, by $2,183.86. In other words, he had a deficit of that amount. So that, as a matter of fact, the loss occasioned by the conduct of the receiver in this respect would amount to the difference between the assets coming into his hands at the date of his appointment and the amount remaining in his hands on September 29, 1894. But looking at the case in this aspect, the receiver would be entitled to some reasonable allowance for collecting these bills receivable and disposing of the personal property in the condition in which it was at the time he took charge of it. No testimony has been

presented to the auditor to enable him to make a finding upon this theory. Taking into consideration all of the circumstances of the case, and the receiver's statement that in the operation of the works he acted upon his own responsibility, it seems to the auditor that the least responsibility to which he could be held would be to require him to bear the amount of the deficit which he incurred ; in other words, require him to pay the excess of his expenditures over the value of the property taken possession of and disposed of by him.   He certainly cannot charge this deficit, occurring in the operation of the works, as against the moneys realized from the sale of real estate, nor has he any right, as it seems to your auditor, to deduct it from the amount found to be due from him to the creditors by reason of his conduct in purchasing at his own sale.

The auditor is therefore of the opinion that the accountant should be surcharged with the amount of the net deficit arising from his management of the trust estate between October 11, 1893, and September 29, 1894, which amounts to $939.85. In ascertaining this amount the auditor has allowed the accountant credit for $1,244.01, being the amount shown as the loss incurred on the Pennsylvania railroad contract, which contract was authorized by the court, and also the loss on the item of bar iron, $3,564.

2. As to the liability of the receiver for the loss incurred in the sale to Garland.

The auditor has already found that the receiver was interested as a purchaser in the sale made by him to Garland, and that the amount realized for the personal property on this sale was vastly less than its real value.   The great number of cases in which attempts have been made by executors, administrators, trustees, assignees and receivers to purchase the trust property at their own sales, either directly or through the intervention of third parties, probably illustrates the necessity for the strict rules established by the courts in this class of cases.   Be that as it may, in Pennsylvania it is certainly well established by an unbroken line of decisions extending from Moody v. Vandyke, 4 Binney, 31, to French v. Pittsburg Vehicle, etc., Co., 184 Pa. 161, that a trustee authorized to make sale of property, whether at public or private sale, is not permitted to bid upon or purchase said property, or be interested therein ; that

if he does, such a sale is voidable at the election of the cestui que trust without reference to its fairness; or, the cestui que trust may, if the property has been disposed of by the purchasing trustee, require him to account for the difference between the purchase price and the value of the property or the profit on a resale thereof.

In 20 Am. & Eng. Ency. of Law, 148, the rule is stated thus:

"A receiver will not be permitted to bid nor purchase at his own sale. Any purchase he may make will be held for the benefit of the parties interested, is voidable at their election, and may be set aside by the court."

A large number of cases are there cited which fully support this statement.

In Moody v. Vandyke, 4 Binney, 31, Chief Justice TILGHMAN says:

"Now even if the administrators had power to sell, they ought not to have made the sale to one of themselves, because the power being joint, ought to have been executed by all of them; and (which is of far greater consequence) because the policy of the law forbids a person to be the purchaser of that which he is appointed to sell. It requires but a small knowledge of the world, to be sensible of the wisdom of this rule. The person entrusted with the sale has so perfect a knowledge of the subject, and so great an opportunity of taking advantage, by appointing the time and place of sale, and employing the agents who conduct it, that to permit him to become the purchaser, would be placing too much confidence in the infirmity of human nature."

In Webb v. Dietrich, 7 W. & S. 401, Mr. Justice SERGEANT says:

"The rule of equity which prohibits a trustee for sale from purchasing the trust property is not founded on his being necessarily guilty of fraud in so doing. It is a rule of public policy which applies in all cases, whether there be fraud or not, and indeed its great object is to prevent fraud by taking away the temptation to commit it. Another reason for the rule is the difficulty, if not impossibility in many instances, of ascertaining whether there was fraud or not."

The liability of the receiver under the facts found does not seem to the auditor to admit of doubt.

A further question arises as to whether this liability of the receiver can be enforced by a surcharge on the present audit. That question seems to be settled by the case of French v. Pittsburg Vehicle, etc., Company, 184 Pa. 161, where a receiver made a sale of the trust property to a firm in which he was to become interested upon the winding up of the receivership. He did become interested in the firm, and upon the filing of his account was surcharged with the difference between the appraised value of the property, as shown by the inventory and the amount realized on the sale.  In Rosenberger's Appeal, 26 Pa. 67, executors were authorized to sell real estate at public sale, and one of them became interested with a third party in purchasing the property which the purchasers subsequently sold at an advance, and upon a settlement of the executors' account, they were surcharged with the entire amount of profit made by the purchasers.  In Wallington's Estate, 1 Ashmead, 307, President Judge KING fully discusses this same question, and sustains a surcharge for the difference between the real value and the price obtained at the public sale.

It should be noted in this connection, that the testimony shows that after the purchase in the name of Garland, and for the benefit of the syndicate a new corporation, called the American Vault, Safe & Lock Company, was formed, to which this property was transferred ; which has been carrying on business since the purchase ; and as to this personal property, it would now be impracticable to set aside the sale and require the receiver to resell.  The only practicable method of adjusting the rights of the parties is by surcharging the receiver.

The only answer made on behalf of the receiver to this liability is, that the sale to Garland was a public sale, and that the receiver is protected thereby.  Nearly all of the cases in which the question has arisen, and in which the trustee has been held guilty of a breach of trust in purchasing, are cases of public sales ; and the cases are clear that the principle applies equally whether the sale be public or private : Wallington's Estate, 1 Ashmead, 307.  But in the present case, the sale to Garland was in no sense a public sale.  There was no competitive bidding at all.  The receiver applied to the court by petition for leave to sell the property to Garland for a fixed sum, stated that he had accepted ten per cent of the purchase

money on account, and recommended that said sale be made, whereupon he received authority to make sale direct to the purchaser. This certainly does not constitute a public sale.

Your auditor is therefore of the opinion that the receiver should be surcharged with the difference between the amount realized for the personal property on the sale to Garland and the value of that property.

3. As to the receiver's right to commissions.

Commissions are a compensation allowed for the faithful performance by a trustee of his duties. Mere neglect of itself might not require the disallowance of commissions, but the action of the receiver in this case goes far beyond mere negligence. It resulted in a total loss to the creditors of the value of a large part of the personal property coming into his hands at the date of his appointment as receiver; and, as we have found, he has been guilty, not merely of a lack of good faith towards the court, touching the property remaining in his hands, and his connection with the sales of that property made by him, but also of concealing his connection with these sales, and of selling the property at a grossly inadequate price, and being interested in the purchase.

Under these circumstances, the auditor recommends that the commissions be disallowed, especially so in view of the fact that the receiver has not been surcharged with the value of the personal property lost by him prior to September 29, 1894: 27 Am. & Eng. Ency. of Law, 187, and cases cited.

### CONCLUSIONS.

Your auditor therefore recommends that the receiver's account be restated, so as to charge him with the amount realized from the sale of real estate less the expenses of making such sales, charging him with the amount received for the personal property, and surcharging him with the difference between the amount received from the personal property sold to Garland and the value of that property; and also surcharging him with the deficit arising from his operation of the works between October 11, 1893, and September 29, 1894.

Exceptions to auditor's report were dismissed by the court.

*Error assigned* was in dismissing exceptions to auditor's report.

*E. P. Douglass*, for appellant.

*J. H. Beal*, with him *O. P. Robertson*, *J. P. Patterson*, *H. L. Goehring*, *J. H. Reed*, *Edwin W. Smith* and *Geo. E. Shaw*, for appellees.

OPINION BY MR. JUSTICE MESTREZAT, January 5, 1903:

We have considered the questions raised on this appeal in connection with the appeal of Lewis McMullen, trustee, from the same decree, in which the opinion has this day been filed. After an examination of the numerous assignments of error we are not convinced that the auditor, whose report was confirmed by the court below, has committed any reversible error in his disposition of the case. The exceptions to the report are principally to the findings of fact, and under our well settled rule, when the court below has approved the finding we will not reverse unless clear error is shown. Here there was evidence to warrant the auditor in reaching his conclusions of fact and the appellant has failed to point out wherein they are clearly erroneous.

The investigation by the auditor was most careful and thorough and the appellant was afforded the fullest opportunity to have the alleged errors corrected on exceptions to two reports. The learned judge of the court below carefully examined the report and exceptions thereto and in confirming the report says he is " convinced that the auditor's report reaches a result as nearly just and equitable as it is possible to arrive at, considering the manner in which the business was conducted by the receiver and the accounts kept by him." We agree with this conclusion.

There is no merit in the exceptions to the learned auditor's conclusions of law. The surcharges were properly made and the receiver's commissions disallowed. The reckless and negligent manner in which the receiver conducted the affairs of the trust estate and the consequent loss to the creditors legally deprived the receiver of the right to commissions. The law does not compensate an officer for inefficiency and wilful neglect of duty. It does, however, hold him strictly responsible for property placed in his hands and imposes upon him the duty of fully accounting for it.

The assignments of error are overruled and the decree is affirmed.