Commonwealth Trust Company of Pittsburgh *v.*
Harkins (et al., Appellants).

Argued May 25, 1933.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*A. M. Thompson,* with him *Roy Rose,* of *Rose & Eiche-
nauer* and *J. W. Madden,* for appellants.

*John M. Freeman,* of *Watson & Freeman,* with him
*Albert C. Hirsch* and *Ralph H. Demmler,* for ap-
pellee.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1933:

This is an application to set aside a sheriff's sale grow-
ing out of the foreclosure of a second mortgage on the
plant of the Miller Printing Machinery Company.   The
court below discharged the rule to show cause why the
sale should not be set aside.   The receivers of the print-
ing machinery company appeal.

The second mortgage was for $100,000 given by Hubert E. Harkins, a straw man, to the appellee trust company. It held also a first mortgage for $250,000 likewise given. Three-fourths of the property is covered by these two mortgages and the other fourth by a mortgage to another trust company. The facts are thus accurately summed up by the learned judge of the court below who filed the opinion for the court in banc: At the time of the giving of the first mortgage the property was vacant. Title was held in the name of Harkins, a clerk in the office of F. F. Nicola, president of the mortgagor company and its principal stockholder. Plans and specifications for a building to be erected on the site were submitted to and approved by the trust company. It was admitted that, while Harkins was the nominal mortgagor, the loan was made for the printing company and the building was to be used to house its manufacturing plant. The mortgagee was so informed at the time the loan was made. When the building was almost completed, the mortgagor began moving its machinery from a former location to the new building. While the moving was in progress, the second mortgage was placed. The machine company executed two bonds, one at the time the first mortgage was given and the other when the second was executed. The first bond was for $250,000. This obligation recited that the company had agreed to purchase the property bound by the mortgage made by Harkins "and as part consideration therefor will, in the deed from Harkins to it, expressly assume and agree to pay the sum of $250,000 secured by the mortgage." It was further set forth that the trust company mortgagee had agreed to lend the sum named partly in consideration of the assumption of payment by the Miller Company and partly in consideration of the latter's undertaking to erect a building on the property. The condition of the bond was that the Miller Company, within one year from its date, should begin the erection and proceed to the completion of a building upon the property in accordance with plans and specifi-

cations submitted to the trust company. The second bond for $350,000 was of the same tenor as to assumption of payment of the two mortgages. The court below found that the expedient of having Harkins appear as the mortgagor was resorted to solely for the purpose of relieving the corporation from the necessity of increasing its indebtedness and reporting the same to the State.

Receivers were appointed for the corporation by the federal court, and default having occurred under the terms of the second mortgage, authority was granted by that court to proceed by foreclosure. The receivers of the company made no defense and judgment was entered. Following the sheriff's advertisement, the receivers petitioned the federal court to withdraw the permission to foreclose the mortgage, claiming that the machinery advertised for sale was personal property and was not subject to the lien of the mortgage. The court declined to withdraw the permission to foreclose and the sheriff sold the property to the mortgagee, the only bidder at the sale. Exceptions and a petition to set aside the sale were filed by the receivers and a rule to show cause was granted, which was disposed of in the way above indicated.

Before us the appellants raise the following points: (1) That the lien of the mortgage does not cover certain machinery claimed by appellants to be personal property. (2) That the lien of the mortgage does not extend to jigs, dies, patterns, etc. (3) That the advertisement of the sheriff's sale was insufficient because it did not give the public information that the chattels claimed to be personal were to be sold. (4) That the price realized was inadequate.

The main contest is over the question whether the machinery, etc., in the mill is personalty, and, therefore, not bound by the lien of the mortgage. The position of appellants is that the mortgage was a lien only upon the ground, the building erected thereon and such water and gas pipes and conduits as were essentially a part of the

building structure. Appellants argue that because all the articles in litigation, even the heaviest of the machines, are readily removable and were so installed that they could be removed without injury to themselves or the building, and because all the patterns, jigs, and dies were made solely for the purpose of manufacturing patented machinery and the patents necessary in such manufacture are still owned and controlled by the printing company, they are not bound by the lien of the mortgage. So far as the patterns, jigs and dies are concerned, it is also contended that they would be worthless to anyone not owning or being licensed to use the patented rights which remain in the receivers.

We think the facts that the machines are removable without injury to the property, and that the patterns, jigs and dies were made solely for the purpose of manufacturing patented machinery and the patents are owned and controlled by the printing company, if admitted, do not take them out from under the lien of the mortgage in view of the rules which have been laid down by us in a number of cases and which accordingly have become rules of property. What was written by Chief Justice GIBSON in Voorhis v. Freeman, 2 W. & S. 116, continues to be the law in this great industrial State. Speaking for the court, he said (pages 118-19) : "...... nothing but a passive regard for old notions could have led them to treat machinery as personal property when it was palpably an integrant part of a manufactory or mill, merely because it might be unscrewed or unstrapped, taken to pieces and removed without injury to the building. ...... Whether fast or loose, therefore, all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold." The doctrine laid down in that case was reaffirmed at the very next term of the court in Pyle v. Pennock, 2 W. & S. 390, and has received its latest confirmation in Titus v. Poland Coal Co., 275 Pa. 431, where

we said, speaking through Mr. Justice WALLING (page 436) : "The Pennsylvania rule is that a chattel placed in an industrial establishment for permanent use, and necessary to the operation of the plant, becomes a fixture and as such a part of the real estate, although not physically attached thereto; in other words, if the article, whether fast or loose, be indispensable in carrying on the specific business, it becomes a part of the realty. ...... Whatever is a necessary part of the machinery for carrying on the business is a fixture irrespective of the manner of its attachment." Appellants concede that, if a mortgage is placed on an industrial plant, the personal property, such as machinery which is necessary to carry on the business of the plant will be subject to the lien of the mortgage, but they argue that, to have this effect, the machinery must be specifically mortgaged. We think such a principle cannot be deduced from our decisions. Cases from other states, such as Hubbell v. East Cambridge Saving Bank, 132 Mass. 437, much relied on by appellants, have no bearing on the controversy. We have established a legal rule of our own, necessary, as we view it, to the safety of investments. What was said by the lower court in Vail v. Weaver, 132 Pa. 363, is not the controlling law of that case. The real question there, as our opinion shows, was whether the machines and fixtures of an electric plant were placed on the property permanently, or as temporary fixtures for a temporary purpose. In the instant case the intent manifested by the mortgage itself, the surroundings of the parties and the testimony of the witnesses was to mortgage an industrial plant and not the land and building alone.

A large part of the property in question consists of jigs, "fixtures," dies and patterns. We are told in appellants' brief that a jig is a piece of metal specially made with the utmost precision with holes in it at specified locations. When a casting is placed upon a drill press and the jig is placed over the casting, the operator need

only apply the drill through the various holes in the jig
and the casting will then be drilled precisely to take its
proper place in the printing press, of which it is to be a
part.  A "fixture" is a piece of metal having the same
function as a jig, except that the operation upon the cast-
ing, which it is designed to facilitate, is an operation of
grooving and planing instead of drilling holes.  As to
the jigs, dies and fixtures, Upham, one of the receivers,
testified that no manufacturing can be done economically
without them, that they do not have any marketable
value apart from the use to which they were put in the
plant, and that they are tools for this particular business
and nothing else.  It was stipulated on the record that
the items of machines, jigs, dies and "fixtures" are used
in the business of the printing machinery company and
that they were placed in the building for permanent use
and were necessary to the operation of the plant.  That
the machinery was put in the plant after the mortgage
was given has no effect upon the lien of the mortgage
where it was in contemplation of the parties when the
mortgage was given that it was to cover the operating
plant: Roberts v. Dauphin Deposite Bank, 19 Pa. 71.
The fact, if it be a fact, that some of the machinery is
covered by unexpired patents and, therefore, cannot be
used can have no bearing on the question now before us,
whether or not they were covered by the mortgage.  That
question will arise, if at all, as a result of their use by
the purchaser.

Appellants refer to the printing machinery company
as terre-tenant of the property and on the assumption
that it is, their able counsel who presented the case at
our bar bases much of his argument.  We think, however,
this designation does not fit the printing machinery com-
pany under the admitted facts.  "A terre-tenant, in a
general sense, is one who is seised of the actual posses-
sion of lands as the owner thereof.  In a scire facias sur
mortgage or judgment, the terre-tenant is in a more re-
stricted sense one other than the holder who becomes

seised or possessed of the holder's lands subject to a lien thereon. Those only are terre-tenants, therefore, in a technical sense, whose titles are subject to the encumbrance": Words & Phrases, 1st Series, volume 8, page 6925, citing Hulett v. Mutual Life Ins. Co., 114 Pa. 142; Chahoon v. Hollenback, 16 S. & R. 425. "One whose title is subsequent to the encumbrance; one other than the debtor, who becomes seised or possessed of the debtor's lands subject to the lien thereof": Words & Phrases, 3d Series, volume 7, page 444, citing Handel & Hayden B. & L. Assn. v. Elleford, 258 Pa. 143. Both the mortgages were in reality the mortgages of the printing machinery company made by a straw man for its benefit, with the understanding between the parties that the completed manufacturing plant of the printing machinery company should be established thereon and operated.

This is not the case of the mortgaging of a bare piece of land and the erection of a building thereon by a subsequent purchaser of the land. Nor is it the case of the erection of a building on land and the mortgaging of land and building and the subsequent bringing into the building of machinery for temporary use as in Vail v. Weaver, 132 Pa. 363, or under a bailment lease as in American Laundry Machine Co. v. Miners Trust Co., 307 Pa. 395. This is a case where both parties to the transaction had in mind a completed manufacturing plant to be subject to the lien of the mortgage, not one where they were putting a lien on bare walls but upon machinery and appliances necessary to the functioning of a completed plant. As was said by Chief Justice GIBSON in Voorhis v. Freeman, supra, the building without the machinery would be a "barn" and nobody contemplated a barn—an empty building and the lands—as the only thing mortgaged in this instance. The court below found that "The building was erected primarily for the purpose of housing the plant of the defendant company; the loan was for the owner of the plant; all the machinery was used in the business of the defendant company,

either in manufacturing Miller Printing Machines or printing machines for other concerns; each of the machines was an integral part of the plant and indispensable to its business." Our reading of the record convinces us that these findings were fully warranted. The mortgage itself by its very terms shows that it bound more than building and land. After describing the lot of ground by metes and bounds, it proceeds with the usual clause "Together with all and singular the building, improvements,......hereditaments and appurtenances whatsoever thereunto belonging." Building and appurtenances under the situation before us would include all machinery and fixtures going to make up the establishment as a completed plant: Blaine v. Chambers, 1 S. & R. 169. Nicola, president of the printing machinery company, testified that at the time negotiations for the two mortgages were given it was represented to the mortgagee that the building was to be for the occupancy of the printing machinery company for the business which it conducted, that the loan was made for it and that it was to pay it and occupy the building.

The fact that the contest before us is to some extent between creditors of the mortgagor represented by receivers and the mortgagee can make no difference. The receivers stand in the shoes of the owner and take only his interest in the property subject to all valid liens against it: Phila. Trust Co. v. Northumberland County Traction Co., 258 Pa. 152; Pearson Mfg. Co. v. Pittsburgh Steamboat Co., 309 Pa. 340.

One of the contentions of the appellants is that the building covered by the mortgages was designed and erected with the express purpose that it should be suitable for a number of manufacturing purposes or for a warehouse or water and rail terminal, the idea being that its value should remain intact or increase, even though the printing machinery company should remove its business, and that this takes it out of the ordinary rule as to the lien of the mortgage covering the machin-

ery, etc. Under the circumstances attending the transaction this can make no difference.

Appellants base much of their argument on the statement: "The mortgage was made by an individual named Harkins. Its payment was subsequently assumed by the Miller Printing Machinery Company, but in the assumption of payment the obligation of the Miller Printing Machinery Company did not extend beyond the obligation assumed by Harkins, the mortgagor." This entirely ignores the true situation, which was that Harkins executed the mortgage as a straw man for the printing machinery company and that its purpose was to mortgage its complete manufacturing plant.

It is complained that the notice of the sheriff's sale was inadequate as respects the owner and the unsecured creditors because the notice did not give the public any information that movable chattels alleged to be worth more than a half million dollars were to be sold. The only thing which would result from adopting this view, if we deemed it well founded, would be a readvertisement and resale. In the light of our conclusion that the mortgage bound all these movable chattels, such a resale would accomplish nothing, as they would pass as part of the plant. Nothing can be gained from a resale unless a higher bid can be obtained and the appellants have not produced any buyer for the property who offers to pay a higher price. The loss to appellee from interest and carrying charges amounts to more than $2,800 per month. The advertisement clearly showed that the property to be sold was a manufacturing plant used in manufacturing printing machinery. We are not prepared to say that the court below was wrong in concluding that under the circumstances the advertisement was sufficient.

The usual rule in granting a resale is to require security for another sale: Snyder v. Snyder, 244 Pa. 331; Somerville v. Hill, 260 Pa. 477. Setting aside or refusing to set aside a sheriff's sale is in the sound discre-

tion of the court below and its decree will not be reversed in the absence of a clear abuse of discretion: Snyder v. Snyder, supra; Watkins v. Justice (No. 1), 256 Pa. 37. Furthermore, appellee in its brief submitted to us offers, should appellants succeed in getting a customer willing to pay more than its bid, to transfer the property to such a purchaser without the expense of an additional sale.

The court below, familiar with the situation, was not convinced that the price bid which would make the cost of the property to appellee $362,183.50, to which must be added accruing carrying charges, was inadequate. Nothing brought to our attention satisfies us that the court was wrong as to this.

The order of the court below is affirmed at the cost of appellants.