Fried et al. *v.* Fabiani et al., Appellants.

Argued October 17, 1935; re-argued November 11, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Joseph K. Willing,* of *Sterling & Willing,* with him *Sydney S. Stern,* for appellant.

*Samuel A. Goldberg,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellees.

OPINION BY CUNNINGHAM, J., January 31, 1936:

The action below was assumpsit by the plaintiffs to recover from the defendants $148.35, with interest, as compensation due them under the provisions of a written contract of employment. It was tried before a judge of the municipal court, sitting without a jury, and resulted in a finding in favor of the plaintiffs for the full amount of their claim; hence this appeal by the defendants.

The making of the contract, under date of September 12, 1933, for a term of five years from the first of that month, and its performance by all parties up to Feb-

ruary 19, 1934, were admitted. On February 21, 1934, defendants, quoting one of the provisions of the contract and referring to certain facts of record, gave plaintiffs notice in writing of their election to exercise their alleged option to terminate the agreement. Nothing was due plaintiffs under the contract at that date, but they challenged the right of defendants to terminate and sued for services alleged to have been subsequently rendered. The figures are not controverted. If defendants did not have a legal right to terminate the contract on the date of their notice, they owe plaintiffs $78.96 as of February 23d and $69.39 as of March 9, 1934. We address ourselves, therefore, to the pivotal question of defendants' right to terminate upon the date of their notice to plaintiffs.

In the agreement plaintiffs described themselves as "experienced in obtaining publicity for professional wrestling matches and in giving business counsel and advice in the promotion of professional wrestling shows in order to make the same attractive to the public" and defendants recited that for sometime past they had been engaged "in the promotion of professional wrestling matches in and about the City of Philadelphia, and at other places within the United States." Defendants agreed to employ plaintiffs to act as their "advisors and assistants in the arrangement of matches and the methods and means of properly presenting them as attractions to the public within the City of Philadelphia," and to pay them a specified percentage of the net proceeds of the respective contests.

The contract expressly referred to the Municipal Convention Hall and the Arena Building and the Arena Stadium as buildings within which wrestling shows were contemplated, and, obviously, was intended to apply to all matches held any place within the City of Philadelphia.

One of its significant provisions was to the effect that

plaintiffs would not, with a single exception hereinafter referred to, give, promote or conduct any professional wrestling contests, or act as agents, advisors or publicity directors for any other promoters, within the city or within one hundred miles thereof, during the term of the contract; nor would they become stockholders, directors or officers in any corporation, or members of any partnership, interested in promoting professional wrestling contests.

The single exception was the Arena Corporation, in which both plaintiffs were stockholders and of which Fried was president and Fishman secretary and treasurer. Plaintiffs were holding and exercising their respective offices in the Arena Corporation on February 19, 1934,—a date which becomes important later on—and neither of them was otherwise employed by the corporation.

The paragraph under which defendants undertook to terminate the contract on February 21, 1934, reads: "In the event that both [plaintiffs] cease being associated with or employed by Arena Corporation, or with a successor corporation owning or operating the Arena Building and/or the Arena Stadium, in any executive or managerial capacity, this agreement at the option of [defendants] may terminate."

The notice of termination contained this statement of the grounds upon which defendants based their right to exercise their option. "We are informed that in February of 1934, upon bill in equity filed by J. George Lipsius, Esq., in behalf of a stockholder, Leo G. Juskowitz, of New York City, in the United States District Court for the Eastern District of Pennsylvania, as of December Term, 1933, No. 8049, the court, upon hearing, appointed Stanley W. Root and Peter A. Tyrrell, receivers for the Arena Corporation. We are also informed that you are no longer 'associated with or em-

ployed by (the) Arena Corporation—in any executive or managerial capacity.' "

The decree referred to in the notice was dated February 19, 1934. Under its provisions Root and Tyrrell were appointed permanent receivers and authorized to operate and conduct the business of the corporation, under the supervision of the court, for a period of ninety days (subsequently extended for six months from May 20, 1934,) and to execute contracts and "hire such employees" as might be necessary.

The fourth paragraph of the decree directed "that the defendant company, and each and every of its officers, agents, directors and employees be and they are hereby required and commanded to forthwith transfer, convey, turn over and deliver to the permanent receivers or their duly constituted agents or representatives all the real and personal property, business, assets and effects above described or referred to and all the property and assets of the defendant company and all books of account, . . . . . . contracts," etc. Neither of the plaintiffs was employed by the receivers in any capacity.

The court below took the view that as the primary purpose of the contract was to secure the exclusive services of the plaintiffs for a definite period, and as the Arena was not the only place in which it was contemplated contests would be conducted, the decree of the federal court appointing receivers for the Arena Corporation did not afford a sufficient basis for termination of the agreement by the defendants.

A majority of the members of this court are unable to agree with this conclusion. We think the real question is whether, by reason of that decree, plaintiffs ceased to be "associated with or employed by Arena Corporation . . . . . . in any executive or managerial capacity."

In considering that particular paragraph of the agreement, we must, of course, take into consideration

all of its provisions, having constantly in mind its subject matter and obvious purpose, as well as the existing connections of the parties with the business of conducting professional wrestling contests.

Although the contract was clearly intended by the parties to govern generally all matches conducted in any building within the city, they wrote into it special and particular provisions with respect to such contests as might be conducted in the Arena Building or Stadium. The propriety of, and necessity for, such provisions are apparent. Plaintiffs were stockholders in the corporation which owned and operated those buildings and were its executive officers. Hence, the necessity for the exclusion and exception, above mentioned, of contests conducted in either of them from the general prohibition against plaintiffs being interested in, or advising with respect to, matches promoted by persons other than the defendants.

Moreover, it was stated in the contract that the defendants then had "a certain agreement [with] the Arena Corporation for the promotion of wrestling shows in the Arena Building and/or the Arena Stadium." The terms of this agreement were not stated. It is perfectly clear, however, that when the agreement now in question was negotiated and executed each of the parties to it were vitally interested in the conducting of professional wrestling contests in the properties of the Arena Corporation. It is equally clear that the continued connection of plaintiffs with that corporation in their then existing executive and managerial capacities was a matter of value and importance to defendants.

Plaintiffs recognized that one of the reasons defendants were employing them was because, as stockholders and officers of the Arena Corporation, they were in a position to decide what contests should or should not be conducted in its buildings. So definite was this recognition by both parties that it was expressly provided

in their contract that if plaintiffs ceased to be associated or employed with or by that corporation in an executive or managerial capacity the defendants should have the privilege of terminating that contract.

Concededly, plaintiffs were executive and managerial officers of the Arena Corporation. Beyond question, the effect of the decree was to exclude them from any active participation in the control and management of its business. By the terms of the decree they were required to turn over to the receivers all of the real and personal property of the corporation and were enjoined from intermeddling with any part of it in any way. It became the exclusive duty of the receivers to hold and preserve all the corporate assets and "to operate and conduct the business" under the supervision of the court. Such receiverships are frequently created: Sullivan Machinery Company v. Griffith, Receiver of Rowena Coal Company, 94 Pa. Superior Ct. 207.

In our opinion, plaintiffs, upon the entering of the decree, ceased, within the contemplation of the contract, to be associated with the corporation "in any executive or managerial capacity."

It is true that the corporate life of the association was not affected by the decree, nor were plaintiffs ousted from their respective offices, but they were excluded from any active participation in the control and management of its business. "While receivers do not acquire the legal title to the assets of an insolvent corporation, yet, they are clothed with a kind of equitable title to be worked out under the order and direction of the appointing court; the effect of their appointment is to remove those in charge of the management of the corporation and to place the receivers in possession and control of its business and assets, as custodians for the benefit of creditors, and others ultimately entitled": Blum Brothers v. Girard National Bank, 248 Pa. 148, 156, 93 A. 940. A receiver "exercises the functions of

the board of directors, managers and officers, takes possession of corporate income, property and assets, directs not only its operation, but, while in control, its policies on all lines": McDougall v. Huntingdon & Broad Top R. & C. Co., 294 Pa. 108, 116, 143 A. 574.

We therefore conclude that defendants, under the express provisions of the contract, were within their legal rights when they exercised their option to terminate its existence.

Judgment reversed and here entered for defendants.