## McClure, Appellant, *v.* Atlantic Rock Co., Inc.

Argued April 10, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*James O. Courtney,* with him *Ernest O. Kooser,* for appellant.

*Frank R. Crow, Jr.,* of *Henderson, Parshall & Crow,* with him *Thomas J. Itell,* for appellee.

OPINION BY MR. JUSTICE BARNES, June 24, 1940:

The question on this appeal is whether certain machinery and equipment placed upon mortgaged premises by a lessee became part of the freehold bound by the mortgage lien, and hence exempt from attachment by a creditor of the lessee.

On February 6, 1923, the Atlantic Fuel Company executed a purchase money mortgage to the Atlantic Coal Company, encumbering eleven tracts of coal and mineral land which it owned in Somerset County to secure the payment of the sum of $46,000. This mortgage was

assigned on November 24, 1937, to Calvin Romesberg. The mortgaged premises contained approximately 1500 acres of land, upon which there was an operating coal plant with a large steel tipple, a tramway, a blacksmith shop, railroad siding, house and other buildings and improvements incidental and necessary to the mining operation. The mortgage embraced all of the coal, ore, stone and minerals underlying the land, as well as the surface, "together with all and singular the buildings, improvements, woods, ways, rights, liberties, privileges, hereditaments and appurtenances."

The facts are complicated by a series of assignments, leases and subleases, involving Calvin, Frank and Norman Romesberg, and the companies in which they appear to have been severally interested,—the Atlantic Fuel Company, the Atlantic Coal Company, the Atlantic Rock Company, and the Romesberg Stone Company.

In 1925, the Atlantic Fuel Company, then the owner of the premises, leased to Frank Romesberg that portion of the mortgaged premises upon which the tipple and other improvements were situate, with the right to quarry bluestone on two adjoining tracts of land. The lessee in the same year assigned his interest in the lease to a corporation called the Atlantic Rock Company, which discontinued the coal mining operation and used the land for a stone quarry. Alterations were made to the tipple so that it could be adapted to sifting and sorting stone. All the other equipment and machinery necessary for stone-quarrying, including a stone-crusher and a large electric motor, were placed upon the leased premises by the Atlantic Rock Company. The motor and crusher, like the tipple, were bolted to deep bases of concrete embedded in the earth. In 1928 the lease was assigned by the Atlantic Rock Company to Norman Romesberg who sublet the property in that year to the Romesberg Stone Company which now carries on the quarrying operations. The Atlantic Rock Company,

however, retained ownership of the stone quarrying machinery.

Calvin Romesberg, the owner of the mortgage, entered judgment on the bond on December 4, 1937, and, as the court below has found, by a writ of fieri facias levied upon "all the right, title, interest and estate of the Atlantic Fuel Company, [mortgagor] . . . the leasehold rights of the Atlantic Rock Company, and also all . . . the fixtures, improvements and appurtenances." Calvin Romesberg purchased the same at sheriff's sale on February 11, 1938.

Prior thereto, in 1929, the plaintiff, H. K. McClure, had entered judgment against the defendant Atlantic Rock Company for an indebtedness of $2,468.86, and in 1934 the judgment was revived. On January 27, 1938, plaintiff levied upon the stone-crusher, the electric motor and other machinery and equipment used in the quarrying operations, and issued a writ of venditioni exponas. While this execution was pending, Calvin Romesberg filed a petition for leave to intervene and obtained a rule upon plaintiff to show cause why his levy should not be stricken off, contending that the property attached was subject to the prior lien of the mortgage, and had been purchased by him at sheriff's sale on foreclosure. Testimony was taken in the court below upon petition and answer, and as a result thereof the rule was made absolute and execution was stayed. Plaintiff appeals from the order accordingly entered.

It is conceded that the tipple and other buildings and machinery which were in place when the mortgage was executed were subject to its lien, but plaintiff contends that the equipment thereafter installed to operate the stone quarry did not become part of the realty nor subject to the prior encumbrance. He asserts that all of the property upon which he has levied, including the crusher and electric motor, can be removed without damage to the freehold and that this fact alone is determinative of the issue.

Unquestionably, the mortgage embraced all of the buildings and equipment of the coal mining plant as a going concern. It contained covenants for the insurance of the mine structures, for the inspection of the mine by the mortgagee, and for the rendition to it of duplicate statements and accounts of the business. The mortgagor was also required to set aside the sum of ten cents per ton of coal sold from the premises for the reduction of the principal debt. It is therefore apparent that the parties intended that an industrial establishment upon the mortgaged premises should be included as a part of the security for the loan.

In *Penna. Choc. Co. v. Hershey Bros. (No. 1)*, 316 Pa. 292, we declared (p. 299) : "Chattels placed in an industrial establishment for permanent use, and necessary to the operation of the plant, become fixtures and hence a part of the real estate, regardless of whether they are physically attached thereto." And we stated in *Cent'l Lith. Co. v. Eatmor Choc. Co. (No. 1)*, 316 Pa. 300, 305, ". . . all machinery in a manufacturing plant, necessary for its operation as a complete going concern, is part of the freehold and bound by the lien of a mortgage thereon . . ." See *Voorhis v. Freeman*, 2 W. & S. 116; *Titus v. Poland Coal Co.*, 275 Pa. 431; *Com. Trust Co. v. Harkins*, 312 Pa. 402; *Roos v. Fairy Silk Mills*, 334 Pa. 305.

The rule is applicable to machinery and equipment installed after the execution of the mortgage, as well as that in place before the creation of the encumbrance. We said in *Penna. Choc. Co. v. Hershey Bros. (No. 1)*, supra, (p. 299) : "If, when the mortgage was given, the parties contemplated it should cover an operating plant . . . the fact that machinery was placed in the plant after the mortgage was given, has no effect upon the lien of the mortgage; if the machinery and appliances are necessary to the functioning of a complete plant, they are fixtures and bound by the lien of the mortgage." And see *Com. Trust Co. v. Harkins*, supra; *Cent'l Lith. Co. v. Eatmor Choc. Co. (No. 1)*, supra.

The question here is not whether any of the machinery can be removed from the mortgaged premises without physical injury to the realty, but whether it forms an integral part of "a complete going concern." The court below found that it was the intention of the mortgagor and those claiming under it that when the machinery and equipment in question were placed in the plant encumbered by the mortgage it was for permanent use and necessary for the operation of the plant. This finding, which is supported by the evidence, is conclusive of the fact that the equipment and machinery became part of the freehold and subject to the lien of the mortgage.

While plaintiff does not question the rule applicable to industrial mortgages, which has become so well settled in this State, he asserts that it cannot be extended to cover the machinery, fixtures and equipment employed in the stone quarry, because that was a new and distinct industrial activity not contemplated at the time the mortgage was created. It is true that there was no quarry upon the land when the mortgage was given and there is no express reference in the instrument to such an enterprise. However, there can be no doubt that the parties intended that *any industrial use* of the premises should inure to the benefit of the mortgagee.

The improvements and equipment used to operate the coal mine have been converted by the lessee for use in quarrying. Extensive alterations have been made to the tipple, which plaintiff admits belongs to the mortgagee. If the property upon which plaintiff has levied should now be removed, the mortgagee would be left with altered structures stripped of their usefulness and fit neither for mining nor quarrying, in place of the going industrial enterprise which formed a major part of his security. An industrial mortgage no longer would be a safe investment if the mortgagor or those claiming under him could thus destroy the value of the mortgage security by changing the form of industry conducted on the

premises. See *Com. Trust Co. v. Harkins,* supra, (p. 410).

Furthermore, the mortgage specifically included the bluestone deposits with all "rights, privileges and immunities belonging or appertaining thereto" and all the appurtenances of the several parcels of land. It cannot be said, therefore, that these parties did not contemplate that quarrying operations might be undertaken upon the mortgaged premises.

The fact that the machinery and equipment here involved were brought upon the premises by a lessee, rather than by the mortgagor, does not affect our conclusion. The rights of the lessee could rise no higher than those of its landlord, the mortgagor. The existence of the prior mortgage and its terms, were matters of record and should have been known to both the lessee and the plaintiff creditor.

The order of the court below is affirmed.