# McCray v. Lawrence St. Associates

*Joseph C. LaRosa*, for plaintiff

*E. Laurence Kates*, for defendant IS Lawrence Street

*Sherman C. Toppin*, for defendant Sherman Toppin Real Estate, LLC

*George Vokolos* and *E. Laurence Kates*, for defendant ISAF, LP

BERNSTEIN, *J.*, May 30, 2013—Plaintiff Lopez McCray filed this slip-and-fall action on April 25, 2011 against the owner of his apartment complex, defendant Lawrence Street Associates, LLC ("Lawrence Street"), and its court-appointed receiver defendant Sherman Toppin Real Estate, LLC ("STRE").[1] Plaintiff's claim proceeded to bench trial on September 12, 2012. The court found for plaintiff and against defendants STRE and Lawrence Street in the amount of $25,000.

Plaintiff lived at 4510 N. Lawrence Street, Philadelphia ("the Property") in 2009. On December 19 and 20, 2009, nearly two feet of snow had fallen.[2] STRE sent snow removal crews to the property.[3] An entity entitled

---

1. Summary judgment as to defendants IS Lawrence Street and ISAF, LP was granted by order of July 6, 2012.

2. Weather reports for December 24, 2009 through December 26, 2009 (Ex. P. 1B).

3. Sherman Toppin Real Estate invoices #35, 36, & 37 documenting

"Sherman Toppin General Contracting" issued invoices for the snow removal; however, the invoices clearly state that defendant "STRE...[d]eployed snow removal crews...." STRE was billing for the snow removal service it provided. For that snow removal service, STRE charged — separately from its income as receiver — $200 per day. A total of $400 was billed for snow removal services those two days. STRE's billing invoices provide: "STRE offers professional and dependable Snow Management Services for Commercial and Multi-Family Residential customers." Further, the invoices indicate that STRE "removed snow on all common element entry/exit points, exterior steps, exterior walkways and public sidewalks."

No snow had fallen between December 20 and December 25.[4] On December 25, between 12 a.m. and 1 a.m., plaintiff used a backdoor to take out his trash. Plaintiff slipped and fell on steps covered with ice and snow leading to a common alleyway. The alleyway was dark. The outside lights had been broken for some time.

Plaintiff suffered herniated discs in his neck and back, and a closed-head injury. Plaintiff attempted self-treatment for a month, but the pain and headaches finally caused him to seek medical care. He received medical treatment for 11 months, and was out of work due to the accident for nearly a year. Plaintiff's back has yet to fully recover. He incurred $7,310 in outstanding medical bills.

Nine months before plaintiff's fall, an order of the court

---

removal of snow from property on 12/19, 12/20, & 1/1 (Ex. P. 1A).
    4. Weather reports for December 24, 2009 through December 26, 2009 (Ex. P. 1B).

dated March 24, 2009 had appointed defendant STRE as receiver of the property owned by Lawrence Street. That order required STRE to "manage, operate, and preserve" the property.[5] The order also authorized STRE to "employ such firms and persons as are deemed necessary to assist the receiver...including...maintenance personnel" and to use funds derived from the premises to pay for "needed maintenance, upkeep and repair...." To the extent that STRE acted within the scope of the receivership, the order immunized STRE from liability for claims related to the property's management. If STRE acted outside the scope of the receivership, the order provided no immunity. Specifically, the order provides that:

> If the Receiver shall have acted in accordance with the terms and conditions of this Order, neither the Receiver, nor any of its employees, agents, attorneys, partners, members, officers, or directors, shall have any liability as to any claim, actions or causes of action of any third parties who have or would have claims against the owner of the Premises...provided however, the Receiver shall be liable for...actions taken by the Receiver that are not authorized by the terms of this Order.

A receiver is "the officer, the executive hand, of a court of equity. His duty is to protect and preserve, for the benefit of the persons ultimately entitled to it, an estate over which the court has found it necessary to extend its care."[6] It has long been the rule under Pennsylvania law

---

5. Order of March 24, 2012 (Ex. D. 1).
6. *Warner v. Conn.*, 32 A.2d 740, 741 (Pa. 1943)(citing *Schwartz v.*

that a receiver is "held to a rigid accountability."[7] As an officer of the court, "[a] receiver has only such powers and authorities as are given him by the court and must not exceed the prescribed limits."[8] So long as the receiver acts within the scope of authority granted by the court, the receiver will be paid for his services and be immune from liability. However, if the receiver acts independently outside of the scope of court appointed power, the receiver is subject to liability.[9]

The March 24, 2009 order outlines the scope of STRE's authority and duty as receiver. Explicit within the order is that STRE is immunized from third party claims when acting in its scope as receiver. The order charges STRE to maintain the property, and authorizes STRE to employ individuals and entities necessary for that task. STRE removed snow from the property on December 19 and 20, 2009, but billed for those services separately from its role as receiver. Effectively and actually, STRE, as receiver, hired itself as an independent contractor to perform snow removal. The invoice states that STRE removed snow from the common areas and entry and exit points of the complex, and charges for that service. STRE negligently failed to remove snow from the rear common area and exit point of the complex, the area where plaintiff fell. Therefore, STRE is liable to plaintiff as it would have been as a negligent independent contractor hired by the

---

Keystone Oil Co., 25 A. 1018, 1018-19 (Pa. 1893)).
    7. Pa. Eng'g Works v. New Castle Stamping Co., 103 A. 215, 217 (Pa. 1918).
    8. Cont'l Bank & Trust Co. of N.Y. v. Am. Assembling Mach. Co., Inc., 38 A.2d 220, 224 (Pa. 1944).
    9. Id.

receiver for snow removal.

Defendant Lawrence Street was the owner of the property. The Restatement (Second) Torts §387 establishes a rule for property owners who transfer management control of their property without transferring ownership. Section 387 states the following:

> An independent contractor or servant to whom the owner or possessor of land turns over the entire charge of the land is subject to the same liability for harm caused to others...by his failure to exercise reasonable care to maintain the land in safe repair as though he were the possessor of the land.[10]

Under §387 the liability of the property manager or receiver does not displace the owner's personal liability for negligent maintenance of the property.[11]

STRE was appointed to manage, operate, and preserve the property. Defendant Lawrence Street retained ownership of the property. Under §387, Lawrence Street remains liable for negligent maintenance of the property even though the court appointed a receiver as property manager. The property was negligently maintained in two respects: the failure to repair the outdoor lighting in the alleyway on the property contributed to plaintiff's fall, and the failure to property clear the property of ice and snow.

---

10. Restatement (Second) Torts §387 (1965).

11. Restatement (Second) Torts §387, cmt. c; *see also Fehribach v. Smith*, 22 P.3d 508, 511 (Ariz. Ct. App. 2001)(reasoning that §387 applies to a landowner who transfers charge of his property to a receiver even though receiver is not chosen by landowner because of principle embodied in the Restatement that landowner retains some liability).

540

Therefore the court's finding for plaintiff and against defendants STRE and Lawrence Street in the amount of $ 25,000 should be affirmed.