## Aufrecht v. Smoyer Brass Products, Inc. No. 1

*Hyman Rockmaker*, for plaintiff.

*Isadore Rapoport*, for defendant.

HENNINGER, P. J., June 13, 1949.—This case comes before the court on a case stated in an action of assumpsit, in which the facts are as follows: On April 15, 1947, plaintiff obtained from defendant the following writing:

"Frank J. Aufrecht, 125 Lincoln Avenue, Newark 4, New Jersey.

"Dear Mr. Aufrecht: This is to confirm our understanding that we are paying you a commission of four cents (.04) per pair, on hinges purchased by Tri-United Plastics Corporation, Irvington, New Jersey. This commission is to be sent to you, as soon as invoices have been paid by Tri-United Plastics Corporation. Yours very truly, L. M. SMOYER BRASS PROD., INC. (s) L. M. Smoyer LMS:fg

"P. S. Check will be submitted directly to your residence, 125 Lincoln Avenue, New Jersey."

On April 16 and April 18, 1947, Tri-United ordered some hinges but the invoices remain unpaid. On April 24, 1947, Tri-United filed a petition under chapter X of the United States Bankruptcy Act and trustees were appointed who operated the business at least until January 26, 1948. While operating the business the trustees ordered from defendant and paid for 79,000 pairs of hinges, for which plaintiff now claims his four cents per pair, or $3,160. Defendant is contesting this claim on the ground that the 79,000 pairs of hinges were not sold to Tri-United, but to its trustees.

The defense is purely technical, because our decision cannot adversely affect Tri-United or its creditors or trustees. Nor does the fact that the price charged Tri-United was 52 cents per pair for the unpaid hinges, while that to the receivers was 47 cents per pair, affect this decision. There is no mention of price in the contract and clearly the parties understood that there might be fluctuations in price. Defendant's profit at 47 cents per pair on 79,000 pairs of hinges might have been proportionately as great or greater than at 52 cents per pair for the small unpaid orders.

The case then resolves itself into the question whether a sale to the receivers was a sale to Tri-United as that term was used in the contract between plaintiff and defendant.

In one respect the receivers merely replace the officers as managers of the business and the corporation remains in business. Paragraph 3 of the amended order appointing the trustees reads in part:

". . . the trustees are hereby authorized to manage, operate, control and conduct the entire business of the debtor . . . to this end . . . to continue until further order of this court the business of the debtor making purchases of supplies and sales of products in the regular course of business, all according to law and subject to such supervision and control by the Court as the Court may exercise by further orders applied for herein."

To the same effect is the language in Fried et al. v. Fabiani et al., 120 Pa. Superior Ct. 558, 564:

" 'While receivers do not acquire the legal title to the assets of an insolvent corporation, yet, they are clothed with a kind of equitable title to be worked out under the order and direction of the appointing court; the effect of their appointment is to remove those in charge of the management of the corporation and to place the receivers in possession and control of its business and assets, as custodians for the benefit of creditors, and others ultimately entitled': Blum Brothers v. Girard National Bank, 248 Pa. 148, 156, 93 A. 940."

A receiver "exercises the functions of the board of directors, managers and officers, takes possession of corporate income, property and assets, directs not only its operation, but, while in control, its policies on all lines": McDougall v. Huntingdon & Broad Top R. & C. Co., 294 Pa. 108, 116, 143 Atl. 574.

We have carefully studied other cases cited by defendant in support of the proposition that the trustee and receiver is a separate entity from the corporation and have no doubt as to their soundness. All such cases, however, relate to the legal effect of dealings with either the corporation or the receiver.

In this case we are not concerned with such matters. The hinges sold before the receivership are unpaid and no claim is made for commissions for them. Those sold to the receiver are paid and the legal status of the receiver is now unimportant.

The question facing us is whether Tri-United operated by receivers was the same customer introduced by plaintiff and on whose business he was to receive a commission. We think it was. True, the managers of the business were different; the corporate officers had been temporarily ousted and the court's officers substituted; former creditors were prevented from harassing the court's officers; but the court's officers were conducting the business of the Tri-United and Tri-United stood to suffer the loss or reap the gain by any transactions.

Whether or not the receivers were the same legal entity as the corporation, the Tri-United, whose business they were conducting, was the same customer for whose business defendant promised to pay plaintiff a commission of four cents per pair of hinges.

If defendant sought to treat the receivers as a new and different customer, plaintiff should have been warned that his continuing contract was considered terminated. He might, if he was no longer defendant's agent, have found another source of supply for Tri-United in competition with his former principal.

We, therefore, find that "Tri-United Plastics Corporation" as used in the arrangement between plaintiff and defendant included all business done through the receivers as well as through the officers of the corporation.

Now, June 13, 1949, judgment is entered in the above case stated in favor of plaintiff and against defendant for the sum of $3,160 with interest from January 26, 1948, and costs.