## Sheaffer v. Trone

*Michael E. Dows,* for plaintiff.
*Sharon E. Myers,* for defendants.

SPICER, *P.J.,* November 1, 1985—For purposes of this opinion, defendant means Richard C. Trone.

Plaintiff, a real estate broker, sues for commissions it claims were earned when it produced buyers acceptable to defendant. Its cause of action is based upon a listing agreement which gave it an exclusive right to sell and provided that a commission would be payable if the property were sold by owner during the duration of the listing agreement "irrespective of the person to whom or the manner in which the sale is consummated."

Plaintiff procured buyers who submitted a signed agreement to defendant on January 14, 1984. This proposal contained provisions that sellers would hold a second mortgage and that the transaction was conditioned upon approval by the Pennsylvania Liquor Control Board.

The real estate involved was a business property in Berwick Township, Adams County, Pa. It is a bar and lounge known as the Looking Glass.

Defendant did not sign the January proposal. However, he entered into another agreement with the same buyers on February 3, 1984. The contract was entitled "Contract of Management With Agreement of Purchase." This agreement is attached to the amended complaint as an exhibit.

Defendant has admitted executing the listing contract and the "management" contract. Based upon these admissions, plaintiff has filed for summary judgment. Technically, the motion is for judgment on the pleadings since only the pleadings are involved. See Pennsylvania Rule of Civil Procedure 1034.

There are no factual issues. The sole questions relate to the proper interpretations of two documents signed by the parties, namely the listing agreement and the February contract between defendant and third-person buyers.

Defendant argues that plaintiff is not entitled to judgment. He contends that the listing agreement requires that a conveyance occur before brokerage fees are earned. He also argues that the February agreement does not estop him from raising questions of the ability of the buyers to perform. He bases this second argument upon what he considers contingencies in the February agreement.

We begin by examining general principles in this area. The general rule is that a broker earns his commission upon producing a ready, willing and able buyer. Once a seller enters into an agreement of sale which is not subject to contingencies, the seller assumes the risk of the buyer's nonperformance. "Having accepted the buyer, the owner will be estopped from later objecting to the buyer's ability to complete the transaction." Shumaker v. Lear, 235 Pa. Super. 509, 513, 345 A.2d 249, 251

(1975); Zitzelberger v. Salvatore, 312 Pa. 402, 458 A.2d 1021 (1983).

"The general rule, of course, can be changed by contract. If the parties express their intention to make the commission contingent or conditional, such as by requiring an actual sale, . . . the broker does not earn his commission until the condition or contingency has been satisfied." (Citations omitted.) Lear, supra, 235 Pa. Super. at 513.

Thus, if a broker produces a buyer who agrees to buy subject to contingencies, a fee will not be earned until the contingency has been fulfilled. Sork v. Rand, 422 Pa. 512, 222 A.2d 890 (1966). However, a contingency is a condition beyond the control of the parties. It involves more than an agreement by either party to perform. Filsam Corp. v. Dyer, 422 F.Supp. 1126 (1976).

Two issues emerge from these general principles. First, does the listing agreement make plaintiff's right to a fee contingent upon a sale and conveyance? Second, does the February agreement preclude defendant from contesting the readiness, willingness, and ability of the buyers to perform?

Defendant argues that use of the word "consummated" in the listing agreement indicates that the parties contemplated settlement as a precondition to earning the fee. However, when read in context, it appears that "consummated" has been used interchangeably with "sold." If owner sold the property, a fee is due no matter how the sale is consummated.

One could conclude that for purposes of fee entitlement, a sale is consummated when an agreement is signed. That is certainly the general rule. We cannot interpret this listing agreement as departing from the general rule.

The Lancaster County Court dealt with a factual situation remarkably similar to the one before us in

Watt v. East End Car Wash, 28 D.&C.3d 208 (1982). The difference between the listing agreement in that case and this one is that "effected" and not "consummated" was used. We view the difference as minor.

This court concludes that the listing agreement did not change the general rule.

There are problems with the second issue which arose out of the method by which the February agreement was signed. Plaintiff had nothing to do with that agreement and it could be argued that contingencies in the contract should not be considered in determining if plaintiff has produced an able buyer. Nonetheless, we will examine that document to determine if it contains pertinent contingencies.

In paragraph one, defendant agreed to convey real estate "subject to the performance by the Buyer/Manager of all the conditions hereinafter set forth." In paragraph two, buyers agreed to pay $25,000 at the signing of the agreement and the balance of the purchase within six months. The only condition of defendant's conveyance was the performance by the buyers: This does not amount to a contingency.

The only contingency in the agreement appears in paragraph three. After providing that defendant would provide a good and sufficient deed at settlement, it was provided "sellers also agree to deliver a Pennsylvania Restaurant and Liquor License at the time of conveyance." Written in immediately after was "subject to approval of the Pennsylvania Liquor Control Board."

There are no other provisions relating to the liquor license. Thus, the inescapable conclusion is that the agreement provided defendant would deliver a license if he could. However, failure to deliver would not affect the transaction.

Paragraph 26 provides that the brokerage fee due plaintiff would be paid at settlement. Defendant could not, of course, unilaterally change the time when plaintiff could claim his fee.

We rule that the February agreement estops defendant from asserting that buyers were unable to perform.

## ORDER OF COURT

And now, this November 1, 1985, judgment is entered on the pleadings in favor of plaintiff and against Richard C. Trone in the amount of $13,200.